Joseph RIZZO, Jack Lanzet, Rubin Goldman, Ira Kolodny, Paul Hammig, Daniel Winfield and Fred Spitaletta, Plaintiffs,

v.

Fred A. AMMOND, as Trustee for Retail Clerks and Food Handlers Union, Local 1262; William A. McLaughlin, as Deputy-Trustee and Acting Secretary-Treasurer of Retail Clerks and Food Handlers Union, Local 1262; James A. Suffridge, as President of Retail Clerks International Association, AFL–CIO; Vernon A. Housewright, as an officer of Retail Clerks International Association, AFL–CIO; and Retail Clerks International Association, AFL–CIO, Defendants.

Civ. A. No. 1030–59.

United States District Court
D. New Jersey.
March 28, 1960.

Krieger & Chodash, Jersey City, N. J.,
for plaintiffs, by Harold Krieger, Jersey

City, N. J., and Samuel M. Koenigsberg, Newark, N. J.

Green & Yanoff, Harry Schaffer, and Julius Wildstein, Newark, N. J., for defendants.

WORTENDYKE, District Judge.

This case is before me on defendants' motion to dismiss the complaint pursuant to F.R.Civ.P. 12, 28 U.S.C., more particularly, under subsection (b) of that Rule, for the following grounds: (1) lack of jurisdiction of the causes of action alleged; (2) lack of jurisdiction over the defendants; (3) non-joinder of indispensible parties; (4) lack of authority for plaintiffs' claimed representative status; and (5) "unclean hands" on the part of the plaintiffs.

Plaintiffs in this action, seven in number, are members, and two of them are officers, of Local No. 1262 (Local) of Retail Clerks International Association, AFL-CIO (International). They sue in their own right, and ostensibly in behalf of all of the members of the Local. Named as defendants are the president and secretary-treasurer (Suffridge and Housewright) respectively, of International, International as an unincorporated labor organization, and two other individuals (Ammond and McLaughlin) members of International; Ammond having been appointed Trustee by Suffridge on January 5, 1959, with authorization to appoint a deputy to assist him in his duties as such Trustee, and McLaughlin having been appointed as such deputy trustee in compliance with such authorization. The appointment of Ammond by Suffridge was by virtue of provisions of section 12(s) of International's constitution, a copy of which is attached to the complaint.[1] There appears to be no allegation in the complaint indicating that the plaintiffs in this action have invoked

[1]. The complaint, exclusive of several attached affidavits consists of thirty-eight typewritten pages comprising three alleged causes of action. The first cause of action is expressed in thirty-eight paragraphs. These are incorporated by reference in the second cause of action, to which are added forty-two more paragraphs, several of which contain numerous subdivisions. All of the preceding allegations are incorporated by reference in the third cause of action, which is followed by sixteen prayers for relief.

By annexing a copy thereof to the complaint, plaintiffs have incorporated by reference therein the provisions of the constitution of Retail Clerks International Association. The preamble of that document recites that the organization is formed for the purpose of promoting unity of action and sentiment among employees in the retail industry. The jurisdiction of International includes all employees of stores, mercantile and mail order establishments who are actively engaged in handling or selling merchandise or performing other services incidental thereto. International is vested with power "to enact and enforce laws for its government and that of subordinate Local Unions, District Councils, and members thereof * * *." While International delegates to the Local the right to make necessary laws for the Local's government which do not conflict with the constitution and laws of International, the right is reserved to International to establish jurisdiction over any Local whose affairs are conducted in such a manner as to be a menace to the welfare of International. All persons over sixteen years of age employed in stores, mercantile and mail order establishments who are actively engaged in handling or selling merchandise are, with certain specified exceptions, eligible for membership in International and each is required to affiliate with a Local. All members are compelled to abide by all of the provisions of the constitution of International, with such regulations as International may make in conformance therewith, and with the regulations of the Local. Any member of International whose Local is in good standing, who is actively employed in the trade, who has been a member in continuous good standing for at least three years preceding January 1 of the year in which an election thereto is held, and who is a citizen of a country covered by the jurisdiction of International, is eligible to hold any International office. Each Local is entitled to make a nomination for each International office. Such nomination shall be made by ballot in the Local, and the names and addresses of the nominees must be in the hands of International's secretary-treasurer on or before March 1 of the year in which the election is to be held. The election shall be held by every Local at its first regular meeting

or unsuccessfully attempted to invoke the remedies provided by the terms of International's constitution for reviewing the action of International's president in appointing the trustee, or of any actions of the trustee or deputy trustee, of which the plaintiffs complain.

Plaintiffs allege that Local 1262 is comprised of over six thousand members, and from uncontradicted affidavits presented upon the present motion it appears that International is composed of 357 Locals, scattered throughout the United States, Puerto Rico and Canada, having an aggregate membership of over 350,000 persons, each of whom, as a member of some Local, is *ipso facto* a member of International. Thousands of such members are citizens of New Jersey.

Plaintiffs' principal subject of complaint relates to the conduct of the affairs and handling of the property of Local under the trusteeship created in January, 1959, pursuant to the provisions of section 12(s) of International's constitution. The operation of this trusteeship commenced when defendant Ammond assumed control over the Local, and appointed McLaughlin as his deputy. It is alleged that the members of Local were deprived by the trusteeship of their right to elect delegates to International con-

---

in the month of June, and the term of office of each successful candidate shall begin September 1.

Great power is reposed in the International president, who functions as chief executive officer of International and is authorized to exercise supervision over its affairs. He is given power to interpret the constitution of International and to decide all questions of law thereunder, and to regulate any controversy or difficulty that may arise between Locals, members of a Local or a Local and its District Council, or a Local and International. In case of charges against any International officer, the International president is authorized to suspend the officer pending investigation, and if the suspended officer is found by the General Executive Board (which consists of the International president and two other officers of International) to be guilty as charged, the International president is required to make the suspension permanent unless otherwise directed by the Board.

Section 12(s) of the constitution, elsewhere herein referred to, deals with the creation of a trusteeship for a Local "whenever in the judgment of the International President a Local Union or other subordinate body, or the members or officers thereof, are working against the best interest of the International Association, or are acting in violation of the Constitution and Laws of the International Association, or are engaging in any activity or course of conduct contrary or detrimental to the welfare of the best interests of the International Association or a Local Union or other subordinate body, so that in his judgment an emergency is created, which requires the taking of immediate action, * * *."

This same subsection (s), authorizes the International president to place the Local union in temporary trusteeship by the appointment of a trustee who shall act under the direction of the International president, shall have power to take charge of the affairs of the Local, possession of its records and assets, and to give bond in sufficient amount to be determined by the International president. Broad and varied additional duties and functions are prescribed for such trustee, including the bringing of disciplinary proceedings against any member or officer of the Local. An accused in such proceedings is entitled to a hearing before a representative of the International president, who is authorized to make recommendations to the latter with his report of the hearing. Thereupon the International president is authorized to take such disciplinary measures as the circumstances warrant, including fine, suspension or expulsion. Appeals from the decision of the International president may be taken to the General Executive Board of International and thence to International's Convention, which is held quadrennially, but in no case shall an appeal act as a stay of proceedings, except as otherwise provided in the constitution.

The situs of International in the present case is in the District of Columbia. Although the trusteeship is in New Jersey, Ammond, the trustee, is not before the Court because he was not served in this District. The review procedures prescribed by International's constitution would have to be pursued in the District of Columbia, where Suffridge, the president of International who appointed the trustee, resides and where he is subject to the jurisdiction of a Federal District Court.

**460**

vention held in June, 1959, and of their right to participate in the adoption of amendments to the constitution of International, the nomination and election of its officers, and transaction of its business. Complaint is also made of the conduct by International's president of the duties of his office, and his handling of International funds. Accordingly the plaintiffs seek to have Local relieved of the trusteeship, Local officers restored to office, and a Local election held under the supervision of the Court. They pray that the assets and records of Local be restored to it, and that an accounting be had of the handling of Local's assets during the period of the trusteeship. In addition to injunctive relief against a continuance of certain practices by the defendants, plaintiffs seek recovery of damages, both compensatory and punitive. They also ask that International be enjoined from holding any election of officers in 1960, and from inviting nominations therefor between March and June of 1960 "unless such election is held under the supervision of this Court and pursuant to the provisions of the International constitution and the Landrum-Griffin Bill." Further particularization of the forms of relief which the plaintiffs seek in this action is immaterial to the determination of the motion presently before me.

In the present case the allegations of the complaint disclose that all of the plaintiffs are members of Local 1262. Two of them are officers of that Local. The acts of which plaintiffs complain are those of International, and acts of the individual co-defendants, performed under International's constitution. Complaint is made of Suffridge and Housewright as members and officers of International, of Ammond as a member of International and trustee of Local, and of McLaughlin as a member of International and deputy trustee of Local. Plaintiffs complain that, in his capacity as president of International, Suffridge violated the provisions of the International constitution in acting arbitrarily and capriciously in appointing Ammond trustee of

Local 1262, and in failing to accord to the Local a hearing in accordance with section 12(s) of the International constitution. Not until we reach paragraph 18 of the first cause of action do we find, for the first time, a reference to a "class", where it is alleged that "plaintiffs and the members of the class represented by them were deprived of the right of representation" at International's convention held in California in June of 1959 (in this connection the date of the convention referred to is erroneously stated as 1955 in paragraph 18 of the first cause of action); that plaintiffs and the members of the so-called class were deprived of the right to take action against the officers of International at that convention; and that they were deprived of their right to seek the aid of other Local unions and delegates therefrom to rid themselves of the unwanted trusteeship. Plaintiffs also complain that although an ostensible hearing pursuant to section 12(s) of the International constitution was held on March 30, 1959, the hearing was a "sham and illusory proceeding" so conducted that no officer or member of Local 1262 attending the hearing could express his views or defend himself from accusation, and that the hearing was conducted in a manner violative of rights not only created by the International constitution, but guaranteed by the Constitutions of the State of New Jersey and of the United States. More specifically, plaintiffs allege that the hearing was conducted by one McGuire, as Suffridge's assistant, and that one Osterling, a son-in-law of Suffridge, acted as secretary. Prescribed notice of the hearing was not given; the officers of Local were not permitted to be present or to appear by counsel; while the defendants were represented by International's general counsel.

In none of the allegations set forth in any of the three separate causes of action of the complaint is there any hint, suggestion or allegation that any of the defendants is being sued in a representative capacity. Suffridge and Housewright are complained of because of their participation in the creation of the trus-

teeship, and because of their handling of the assets and affairs of International. Ammond and McLaughlin are complained of because of their conduct of the trusteeship in their respective capacities of trustee and deputy trustee. International is sued because, acting through its officers, it has allegedly deprived the plaintiffs and their fellow-members of Local 1262 of rights as members of that Local and as members of International.

Upon the complaint and supporting affidavits, plaintiffs obtained from this Court, on November 20, 1959, an order directing the defendants to show cause on November 27, 1959 why the election of International officers for 1960 should not be enjoined. The return of that order to show cause has been adjourned by mutual consent from time to time, and is still pending.

No answer has been filed by any of the defendants, but an order was made, upon their motion under Rule 12(e), for a more definite statement of the allegations of the complaint. Voluminous depositions have been taken by both parties, partly for use upon the return of the order to show cause, in lieu of oral testimony, and partly for purposes of discovery under Rule 26.

### Jurisdiction of the Subject Matter

The complaint avers jurisdiction under 28 U.S.C.A. §§ 2201 and 2202 (Declaratory Judgments Act). No jurisdiction is conferred by that Act. Skelly Oil Company v. Phillips Petroleum Company, 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194. By alleging plaintiffs' residence in New Jersey, and that of the individual defendants in other States, coupled with the statement that International's principal office is in the District of Columbia, plaintiffs impliedly invoke the diversity jurisdiction of the Court, although no specific statement appears in the complaint respecting the pecuniary amount, if any, involved in the litigation (other than the prayers for compensatory and punitive damages).

The defendants contend that because defendant International is an unincorporated association, including within its membership many citizens of the State of New Jersey, in which all of the plaintiffs reside, no diversity of citizenship exists sufficient to support jurisdiction in this Court; and that the requisite minimum amount involved to confer jurisdiction, even assuming diversity, has not been pleaded or shown to exist.

The plaintiffs argue that the action is a class action, as contemplated by Rule 23(a) and that the representative status of the defendant International offsets the effect upon the Court's diversity jurisdiction of the conceded fact that many members of International are citizens of New Jersey.

In Oskoian v. Canuel, 1 Cir., 1959, 269 F.2d 311, an issue arising in a representative action based upon diversity of citizenship was resolved in favor of the party asserting jurisdiction. That case originated in the United States District Court for the District of Rhode Island. Under Rhode Island law, an unincorporated association is suable by bringing the action against *all* of its members. The complaint sounded in tort. It alleged that, in a representation election conducted by the National Labor Relations Board among the employees of a certain bakery, Independent Bakery Workers Union prevailed and was duly certified by the Board as the collective bargaining agent for the employees in that establishment. In the same election Local 184 of the Bakery and Confectionary Workers International Union of America was rejected. It was alleged that despite that rejection, International conspired with the employer to interfere with and terminate the employment of the plaintiffs, who were members of the Independent. The plaintiffs were Massachusetts citizens, and purported to sue on behalf of themselves and others similarly situated, but they were treated by the District Court, 23 F.R.D. 307 as a "spurious" class under Rule 23(a) and, because of that status, the Court held that rights of absent members of the

class could not be adjudicated. The thirteen named defendants were alleged to be citizens of Rhode Island and members of International, and they were sued as members and representatives of an aggregate of more than 50,000 members of that unincorporated labor organization. One of the individual defendants was sued as a direct representative of International and two of the others as officers of the rejected Local. Defendants' motion to dismiss for lack of capacity in the defendants to be sued as representatives of International was denied. Leave to appeal was granted by the Circuit Court of Appeals, which affirmed the District Court. The reviewing Court, [269 F.2d 313] applied the general rule that "capacity to be sued must be governed by the law of the state in which the district court is held" and distinguished Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 4 Cir., 1945, 148 F.2d 403, certiorari denied 332 U.S. 841, 68 S.Ct. 262, 92 L.Ed. 413. The law of Rhode Island permitted the maintenance of an action against an unincorporated association by suing the president and secretary. The Court indicated that, if the plaintiffs had complied with the procedure prescribed by the Rhode Island statute, Gen.Laws R.I.1956, § 9–2–12, the action would have been properly brought, under F.R.Civ.P. 17 (b), against the union as an entity; but because of failure to join the president and secretary of International, the attempt to bring the action against it as an entity failed. Nevertheless, the Court stated that such failure to adhere to the requirements of the Rhode Island statute did not necessitate the dismissal of the action, since, "although the substantive allegations of the complaint plead tortious conduct of the International Union, the individual defendants may have been named as representatives not of the Union but rather of a class comprising its members." Reference was made by the Court to Lowry v. International Brotherhood of Boilermakers, etc., 5 Cir., 1958, 259 F.2d 568, and Fennell v. Bache, 1941, 74 App.D.C. 247, 123 F.2d 905, certiorari

denied 1941, 314 U.S. 689, 62 S.Ct. 359, 86 L.Ed. 551.

In the Lowry case, supra, the International was domiciled in Kansas but had a local lodge with many members in Mississippi. It was sued in the Southern District of Mississippi as an entity, together with certain non-resident officers fairly representing the members. The action was by a union member, resident of Mississippi, who had been suspended and expelled from the International and its local union. The case had been removed from the State court upon the asserted ground of diversity of citizenship, but the appellate court directed a remand because, despite the representative status of certain of the defendants, the fact that some of the members of International were residents of the State in which the plaintiff resided precluded the existence of the necessary diversity, and thereby destroyed Federal jurisdiction. At page 573 of 259 F.2d of the opinion the Court said:

"While alternative methods of suit are provided by Rules 17(b) and 23 (a), diversity of citizenship for federal jurisdiction must still exist between all of the parties on one side and all of the parties on the other. If the association is sued or sues as an entity under Rule 17(b), citizenship is determined by the individual members; if the association is a class party under Rule 23(a), the representatives named must have complete diversity from the other side. If the association in the capacity as an entity is joined with persons fairly representing that association as a class, then no doubt the association itself is a party and citizenship is determined accordingly. In the present case, that was the situation—the defendant union, as an entity, was joined with named non-resident officers as fairly representing the membership. Thus, to determine diversity of citizenship, we must look to all of the members of the union as well as to the named representatives of the class."

Underwood v. Maloney, 3 Cir., 1958, 256 F.2d 334, 337, certiorari denied 1958, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97, involved appeals in actions tried together in the District Court for the Eastern District of Pennsylvania. In one of the cases Underwood, a resident of Pennsylvania and president and business agent of a labor union local, sued Maloney, a resident of Illinois, individually and as president and representative of the international union with which the local was affiliated. Plaintiff sought injunctive relief to prevent enforcement of an order of international's executive board which removed him from his position as president and business agent of the local. The Court of Appeals pointed out that it was clear that jurisdiction as to the international was asserted "on the theory of a class suit in which only the citizenship of the representatives of Local 542 and of the International, the two respective 'classes,' need be considered for the purposes of maintaining diversity jurisdiction." Citing Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673. Because however, the law of Pennsylvania forbade a suit by or against an unincorporated association to be maintained as a class action, such an association must sue or be sued as an entity in a Federal Court sitting in that State. F.R.Civ.P. 17(b). Accordingly, "where jurisdiction is sought to be founded on diversity of citizenship, the action being by or against an unincorporated association, as it must be applying the law of Pennsylvania which obviates class suits, the citizenships of the individual members of the unincorporated association must be shown to be wholly diverse from that of the opposing party or those of the opposing parties." The Underwood case applied the law of Pennsylvania relating to actions by and against unincorporated associations in determining whether or not diversity jurisdiction existed.

The New Jersey statute applicable to actions by or against unincorporated associations is to be found in Chapter 64 of Title 2A of New Jersey Statutes Annotated, providing that "[a]ny unincorporated * * * association, consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights and liabilities, with the same force and effect as regards such common property, rights and liabilities as if the action were prosecuted by or against all the members thereof. * * " N.J.S.A. 2A:64-6 provides that Chapter 64 "in so far as it relates to actions of an equitable nature against unincorporated organizations or associations, shall not apply to a fraternal, charitable or other organization not organized for pecuniary profit."

Marchitto v. Central Railroad Company of New Jersey, 1952, 9 N.J. 456, 88 A.2d 851, 856, held that an unincorporated association (The Brotherhood of Railroad Trainmen) was "not a separate legal entity in the eyes of the law, having no existence apart from that of its individual members. At common law it could neither sue or be sued, * * *. By statute suits by and against it in the association name have been authorized, R.S. 2:78-1 (now N.J.S. 2A:64-1, N.J.S.A.), but such statutory authorization has not changed the substantive nature of its rights and obligations; * * *." Since, therefore, the defendant International in the case at bar is an unincorporated association consisting in part of members who are residents of the State of New Jersey, and because the jurisdiction of this Court can be found only in the event of the existence of complete diversity of citizenship between all parties plaintiff and all parties defendant, the attempted circumvention of the diversity requirement is as ineffective in the case at bar as it was in that of Underwood v. Maloney, supra. See International Allied Printing Trades Association v. Master Printers Union of New Jersey, D.C.N.J.1940, 34 F.Supp. 178; Stein v. Brotherhood of Painters, Decorators and Paper Hangers of America, D.C.N.J. 1950, 11 F.R.D. 153; Garfield Local 13-

566 Oil, Chemical and Atomic Workers Intern. Union, A.F.L.-C.I.O. v. Heyden Newport Chemical Corp., D.C.N.J.1959, 172 F.Supp. 230.

Plaintiffs concede that, if suit is only against International, "the problem of non-diversity would be an insuperable one" but they rely on Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 as authority for the employment of the device of the class action for circumvention of the obstacle of non-diversity. That case was cited as a "perfect example of the true class action under Rule 23(a)(1)" in Lowry v. International Brotherhood of Boilermakers etc., 5 Cir., 1958, 259 F.2d 568, 574; but in the latter case the Court rejected "jurisdiction based on diversity over the unincorporated association as such as a party defendant since it appears that many members of defendant union are citizens of * * * the same (State) as is the plaintiff." In the Ben-Hur case supra, the prior suit which was held to have been binding upon persons not made parties thereto was a true class action brought by less than all Class A members of the fraternal benefit association as representatives of all members of that Class to enforce a right common to all of them.

Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, supra, cited by plaintiffs, is not apposite here. In that case, the District Court had originally overruled defendants' motion to dismiss based on lack of service of process, but had dismissed the case for lack of jurisdiction of the causes of action. The Court of Appeals, in 1944, 4 Cir., 140 F.2d 35, had affirmed the District Court's dismissal upon the ground that it had derived no jurisdiction under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., under which the causes of action were alleged to have arisen. The Supreme Court, in the same year, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, reversed the Court of Appeals and remanded the case "for consideration of the jurisdictional questions arising out of service of process." The jurisdictional question of diversity of citizenship was not involved in the case, but rather that accorded by 28 U.S.C.A. § 1331(a).

Plaintiffs' further reliance upon Cross v. Oneida Paper Products Co., D.C.N.J. 1954, 117 F.Supp. 919, and Harker v. McKissock, 1953, 12 N.J. 310, 96 A.2d 660, is also inefficacious. In Cross, supra, there were two actions, the first brought in the Federal District Court, and the second in the Chancery Division of the Superior Court of New Jersey and thence removed to the District Court. In the first, or District Court suit plaintiffs entered a voluntary dismissal before answer was filed. The second, or State court suit was removed to the Federal Court upon the asserted Federal jurisdiction arising under the Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1051–1127, the jurisdictional provisions of 28 U.S.C.A. § 1338, and also those of 28 U.S.C.A. § 1332. Both actions were brought against the same defendants. The defendants in the removed action moved to vacate the dismissal of the original Federal case, and the plaintiffs in the removed action moved to remand that suit to the State court. The motion to vacate the voluntary dismissal was grounded upon the contention that the action was a class action, and that because of its character as such it could only be dismissed upon notice to all members of the class represented. Accordingly, the motion to vacate the voluntary dismissal was granted. The motion to remand the second or State court action was denied because the basis for Federal jurisdiction was alleged diversity of citizenship between the parties, and the decision of that question was made to depend upon whether or not the action was a class action. The Court held that "if it is a class action, then we consider the citizenship only of the present plaintiffs, as contrasted with the citizenship of the defendants. * * * Since the present plaintiffs are citizens of Illionis, and the defendants are to be considered as citizens of New Jersey, * * * the requisite diversity of citizenship would then exist. But if it is not a class action, but one brought in the name of

the association or its officers authorized by the association, then we must consider the citizenship, not of the present plaintiffs, but of all of the members of the Union, which goes up into the thousands, and doubtless contains New Jersey citizens. * * * Thus the necessary complete diversity would then be lacking." [117 F.Supp. 923.] The Court held that the complaint alleged an action brought in behalf of a class, and that because both of the defendant corporations were doing business and were served in New Jersey, although chartered elsewhere, they were both New Jersey citizens under 28 U.S.C.A. § 1391(a, c) for venue purposes. Citizenship of the plaintiffs, being that of Illinois, the Court found the requisite diversity.

The Harker opinion, supra, in 1953 (12 N.J. 310, 96 A.2d 660) was the *Third* successive contact with the case by the New Jersey Supreme Court. The litigation was instituted (1948, 1 N.J.Super. 510, 62 A.2d 405, 407) as a true class action by members of a labor union local for the "ascertainment of whether the plaintiffs or the defendants and the members of the Local whom they are alleged to represent are properly to be considered the Local." These plaintiffs contended that the attempted secession of the local was not legally effective and that the local remained a national union affiliate, subject to the constitution of the national organization. The principal defendants were members of the *local's* official board at the time of the secession, who continued thereafter to administer its affairs and property. Plaintiffs obtained a judgment restraining the continued administration of the local's affairs by the official board, directing the members of the board to account for the local's assets, and granting incidental injunctive relief against the national union and the other defendants. The judgment of the trial court was reversed by a majority of the Appellate Division (10 N.J.Super. 26, 76 A.2d 89), and the case was appealed to the Supreme Court (1951, 7 N.J. 323, 81 A.2d 480). That Court then held that there was a valid and effective act of dis-

affiliation by the members of the local, which did not require unanimous action for that purpose. It also held that since the separation from the national union was the voluntary act of the local, the provision of national's constitution for the forfeiture of local's property in the event of disaffiliation was available to national. The case next came before the Supreme Court on application for rehearing (1951, 8 N.J. 230, 84 A.2d 723) on the ground that the forfeiture of the property of the local had been improperly decreed when the local itself was not a party to the suit. The rehearing was denied upon the ground that the non-joinder of the local, as such, would not excuse the named defendants, as local officers, from compliance with the judgment of property forfeiture. Thereafter, upon the remission of the cause to the Superior Court, the local moved for leave to intervene as a party. This motion was denied and the local appealed. It contended that it had not authorized the institution of the action by the plaintiffs in its name, that said plaintiffs represented but a few of its members, and did not, and because of conflicting interests could not, have adequately represented the membership in a class action. The local further contended that because the individual dissenting plaintiffs asserted that they were the true local, and because the individual defendants were acting independently and against the local's interests, it could not be considered that the local was a party to the suit. The Supreme Court disagreed with these contentions and held that the local's collective membership was adequately represented in the proceedings and that the association was concluded by the judgment. In this, its final opinion (12 N.J. 310, 96 A.2d 660, 663), the Supreme Court restated the common law rule that in the absence of an enabling statute a voluntary association cannot sue or be sued in the association name. The Court held, however, that since the association did not have a separate legal entity, the action was maintainable only by or against the members collectively, and that, under the doc-

trine of virtual representation, where the members of the society were too numerous to be joined in one action, one or more of the members might sue or defend on behalf of themselves and all others similarly situated. Referring to the New Jersey statute permitting suit by or against an unincorporated association of seven or more persons, the Court stated that "as concerns suits of an equitable nature the act has no application to 'a fraternal, charitable or other organization not organized for pecuniary profit,'" (citing N.J.S. 2A:64–1, 2A:64–6, N.J. S.A.), and that the practice of suit by or against an unincorporated association in its collective name had not superseded the equitable doctrine of virtual representation. (Citing New Jersey Rule of Civil Practice 3:23–1, which provides a method for acquiring jurisdiction of the collective membership of an association of that type.) The Court held that the equitable doctrine of virtual representation was applicable to the case before it, and that accordingly the local as such had been afforded a full and adequate hearing of all of the issues on the merits and was bound by the judgment.

The question of jurisdiction in an action between members of a labor union local and their employer and certain other local members was also considered in Giordano v. Radio Corp. of America, 3 Cir., 1950, 183 F.2d 558, 560. The jurisdictional foundation claimed there was diversity. The action was by a local member in his respective capacities as an individual, as treasurer, and as a representative of the other members of the local against the corporate employer of the members of the local, and against two other local officers individually and as representatives of the "Trial Board," and such other local members as were alleged to have been acting in concert with the Board members. Plaintiff claimed that he and fifteen other members and officers of the local were about to be expelled as a result of charges brought against them, and injunctive relief was sought to prevent the expulsion. In the trial court a motion of the defendants to dismiss the complaint was denied, but a preliminary injunction was granted. The Court of Appeals vacated the order for the preliminary injunction and remanded the cause to the District Court with directions to dismiss the complaint. Judge Maris, writing the opinion for the Court of Appeals, expressed the view that "the membership of an unincorporated labor union may constitute a class on whose behalf representatives may bring a true class suit to vindicate the common rights of the members as such", but pointed out that F.R.Civ.P. 23(a) provides "that the representatives of the class who bring the suit must be such 'as will fairly ensure the adequate representation of all.'" The Appellate Court found that the members of the local were sharply divided on the very question involved in the litigation, i. e., whether the plaintiff and his associates should be expelled, and that "[w]ith a class thus sharply divided in opinion it would be absurd to say that the leader of one faction in the internecine struggle could adequately represent the whole membership." It was, therefore, concluded that the suit could not be sustained as one brought on behalf of the whole membership of the local as a class, or even on behalf of all members with the exception of the two individual defendants and those acting in concert with them. It was held that the action must be regarded as having been brought by the plaintiff alone to redress his own personal grievances, or possibly also the grievances of the fifteen other individuals whose expulsion with the plaintiff had been voted. The plaintiff was a citizen of Pennsylvania, two of the individual defendants were citizens of New Jersey, the action was brought in the District of New Jersey. However, the Court of Appeals found that jurisdiction was lacking because the evidence failed to disclose that the plaintiff would suffer pecuniary loss of as much as $3,000 (the then minimum jurisdictional amount) in consequence of his threatened expulsion from the local. Accordingly, the District Court was reversed for failing to dismiss the complaint for want of jurisdiction, be-

cause of failure to plead the requisite jurisdictional amount in controversy. Thus, in the Giordano case, although there was diversity of citizenship, there was an absence of allegation of the requisite jurisdictional amount.

■ The movants in the present case also urge the absence of the requisite jurisdictional minimum as well as the lack of diversity of citizenship. An examination of the complaint will indicate that, if its allegations are sustained by proof, none of the plaintiffs, nor all of them as a group, can recover any specific amount of money. Neither does it appear that any of the plaintiffs, nor all of them together, will lose any amount of money if denied the relief which they seek in this action. The contention that the matter in controversy exceeds the requisite jurisdictional minimum finds no support either in the allegations of the complaint or in the facts disclosed in the affidavits annexed thereto. See McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Kaufman v. Liberty Mutual Ins. Co., 3 Cir., 1957, 245 F.2d 918.

As we have previously indicated, the aid of this Court has been sought by the plaintiffs under the provisions of the Federal Declaratory Judgments Act, which alone are insufficient to confer jurisdiction. For the violations of the International constitution charged against the individual defendants, and for alleged misappropriations of Local and International funds by such defendants, plaintiffs claim that they have no adequate remedy at law and that they and the class represented by them, i. e., other members of Local 1262, will suffer irreparable loss from the continuation of the activities of and conditions created by the individual defendants. In addition to injunctive relief and the appointment of a receiver, and despite their assertion of the unavailability of an adequate remedy at law, the plaintiffs ask for compensatory and punitive damages.

The affidavits presented to the Court upon the pending motion place sharply in issue, if they do not completely refute, the authority of the named plaintiffs in this action to represent other members of Local 1262. Assuming, however, that such authorized representation exists, there appears no contention or statement of theory in the complaint that any of the named plaintiffs or any of those other members of the Local who might be represented by them could recover any money damages, be they compensatory or punitive, for the causes therein alleged.

Under the authority of the Giordano case, supra, therefore, even if diversity of citizenship could be spelled out, or its necessity circumvented by the class character of the status of any of the parties, jurisdiction fails for lack of showing of the requisite amount involved. See Seslar v. Union Local 901, Inc., 7 Cir., 1951, 186 F.2d 403, 30 A.L.R.2d 593, certiorari denied 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367.

### Jurisdiction of the Defendants

We consider a further ground urged by the defendants for a dismissal of the action, viz., lack of personal jurisdiction over the defendants. In this regard, it is contended that service of process was not in accordance with the provisions of F.R.Civ.P. 4(f), which requires that personal service upon a defendant in an action in this Court be made within the District of New Jersey. Picking v. Pennsylvania Railroad Co., 3 Cir., 1945, 151 F.2d 240, rehearing denied 152 F.2d 753.

The summons and complaint were served on the defendant Ammond by the United States Marshal for the Southern District of New York, at 250 West 57th Street, in New York City. Suffridge was served by the United States Marshal for the District of Columbia in that District. No service was effected upon the defendant Housewright. Personal service was effected upon the defendant McLaughlin, in his capacity as deputy trustee of Local 1262, at his office in the City of Newark, New Jersey.

■ The complaint alleges that, in his capacity as deputy trustee for Local 1262, McLaughlin was acting for International,.

and therefore, the plaintiffs contend that the service upon McLaughlin in New Jersey was valid and effective to obtain jurisdiction over International. F.R.Civ. P. 4(d)(3) provides that service of process shall be made upon an unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent or to any other agent authorized by appointment or by law to receive service of process. However, McLaughlin had been designated as deputy trustee of Local 1262 by Ammond, who was the appointee of Suffridge, the president of International. McLaughlin, as Ammond's assistant and deputy would be a general agent of International, and service upon him within the District of New Jersey would be effective to obtain jurisdiction over International. See Underwood v. Maloney, D.C.E.D.Pa.1953, 14 F.R.D. 222; Claycraft Co. v. United Mine Workers of America, 6 Cir., 1953, 204 F.2d 600.

Plaintiffs urge that by appearing and taking affirmative steps in the cause, the other individual defendants, Ammond, Housewright and Suffridge, have submitted themselves to the jurisdiction of the Court and have waived their right to contest the validity of the service of process upon them. It is a fact that all of the defendants have appeared in this case and actively participated, through counsel, in a motion under F.R.Civ.P. 12(e), and in the taking of depositions and making of motions incidental thereto. F.R.Civ.P. 12(h) provides that a party waives all defenses and objections which he does not present either by motion as provided under the Rule, or, if he has made no motion, in his answer or reply. To this provision, however, the subdivision of the Rule 12(h) makes the following exceptions: (1) the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensible party, and the defense of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings, or at the trial on the merits; and (2) whenever lack of jurisdiction of the subject matter appears, the Court shall dismiss the action. Plaintiffs rely upon the provisions of F.R.Civ.P. 12(g) to support their contention that the defendants, by their failure to include in their motion under subdivision (e) of the same Rule (for a more definite statement in the complaint) the defenses and objections urged in support of the present motion, have precluded themselves from prevailing upon the present motion. Defendants, however, place their reliance upon Orange Theatre Corporation v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, certiorari denied Orange Theatre Corporation v. Brandt, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573, in their present motion.

The Orange Theatre case, supra, was a private civil antitrust action for treble damages. The defendants consisted of one corporation and five individuals. The action was brought in the United States District Court for the District of New Jersey. Three of the individual defendants were served in the Southern District of New York and the remaining two individual defendants were served in the Eastern District of New York. Following this service a stipulation was entered into by counsel for the parties extending the time for the defendants to answer or otherwise move with respect to the complaint. Thereafter the five individual defendants jointly moved to quash service of process and to dismiss the complaint. The motion was granted, but on appeal the parties and the Court treated the motion as having presented only the defense of improper venue. The Court of Appeals reversed and remanded. Upon remand, the District Court reinstated the complaint which it had dismissed, and extended the time within which the defendants might answer or move with respect thereto. Within this extended time the individual defendants again moved to quash service and dismiss the complaint. The District Court again granted that motion, and the case again came before the Court of Appeals. In re-

viewing the second motion below, the Appellate Court concluded that "the defense which it seeks to assert is not that of improper venue but rather want of jurisdiction of the court over the persons of the individual defendants, * * *." In affirming the trial court's second order of dismissal, the Court of Appeals, speaking through Judge Maris, said, 139 F.2d at page 873:

> "If, however, we treat the motions, as we think we must, as raising the defense of lack of jurisdiction over the persons of the individual defendants rather than the defense of improper venue we are forced to conclude that the individual defendants' original motion was not served out of time. For if the extraterritorial service upon the individual defendants was unauthorized and invalid it did not confer upon the district court the power to adjudicate the controversy between the parties. Munter v. Weil Corset Co., 1923, 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652. The individual defendants were, therefore, entitled to ignore the whole proceeding and subsequently attack any default judgment which might result from it. Butterworth v. Hill, 1886, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119 * * *. The filing by the individual defendants of the stipulation for the extension of the time for answering or otherwise moving with respect to the complaint amounted to a voluntary appearance in the action which gave the court power to adjudicate the controversy to which they were parties. * * * The question then arises whether by thus voluntarily placing themselves under the court's power the individual defendants lost the right to assert the original lack of jurisdiction over their persons."

Pointing out that, prior to the adoption of the Rules of Civil Procedure, such a voluntary appearance ordinarily had the effect of depriving the defendants of the right to avail themselves of the original lack of jurisdiction over their persons, and referring to the change effected by the Rules in that respect, the opinion further states, 139 F.2d at page 874:

> "If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express terms of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules. We conclude that within the time allowed for serving the answer the defendant may assert this defense unless he has waived it by some action other than his voluntary appearance."

■ In the case at bar no answer has as yet been filed. While it is true that the defendants have moved for a more definite statement of the complaint under Rule 12(e), such a motion in my opinion does not amount to a waiver of defenses or objections as contemplated by subdivision (h) of the same Rule. Indeed, the prolixity of the allegations of the complaint and the abstruseness of the theory or theories upon which the plaintiffs claim to be entitled to relief fully justified the defendants in seeking a more definite statement before determining upon the defenses which they would raise or upon other appropriate action which they might take against the claims so clarified.

I conclude that there has been no waiver by the defendants of their right to contest the jurisdiction of this Court over them, by way of the present motion. See Troup v. McCart, 5 Cir., 1956, 238 F.2d 289, rehearing denied 1957.

The motion to dismiss this action for lack of personal jurisdiction over the defendants Ammond, Housewright and Suffridge must prevail.

■ Plaintiffs take the position that, if diversity of citizenship is destroyed by reason of the conceded fact that some of the members of the defendant Inter-

national are citizens of New Jersey, and therefore fellow-citizens with the plaintiffs, leave should be granted to the plaintiffs to drop International as a party defendant. Such a device would not create or restore jurisdiction. The defendant McLaughlin, the only one of the defendants who was served in this District, although a citizen of Maryland, is complained of only as "Deputy Trustee and officer of Local Unions." Although the Court appears to have acquired personal jurisdiction over the defendant McLaughlin, no relief appears to be sought by the plaintiffs against him other than his ouster as Deputy Trustee. Despite their number and variety, the prayers for relief relate to McLaughlin only to the extent of seeking a restraint against his interference (1) with a receiver, if any, if, as and when appointed by this Court, (2) with the members of Local 1262, and (3) with the officers of that Local. The only other places in the thirty-eight page complaint in which McLaughlin is mentioned by name are in paragraph 3 of the the first cause of action, which alleges that he is a resident of the State of Maryland, in paragraph 12 of that cause of action which alleges that he and others are parties to International's constitution, and in paragraph 26 of the same cause of action, which alleges that he presided over a meeting of the members of Local 1262 in June, 1959, designated himself as Acting Secretary-Treasurer of the Local, refused to permit officers or members of Local to have any voice in the meeting, refused to entertain motions by Local members, and threatened them with physical harm if they attempted to carry on the affairs of the Local. It is obvious that the injunctive relief sought against McLaughlin is only *pendente lite,* and whether he should be ousted as Deputy Trustee depends upon an adjudication of the propriety not only of his conduct while occupying that position, but also of his appointment in the first instance. Hence, although the Court may have acquired personal jurisdiction over McLaughlin, there is no showing of in-volvement of requisite jurisdictional amount to support jurisdiction in the Court of the subject matter of any cause of action in behalf of the plaintiffs against him. Even if the complaint were amended by dropping the International as a party defendant, as suggested by the plaintiffs, it would not sustain jurisdiction in the Court over McLaughlin individually, nor would he then have a status in the case as representative of International. Therefore, the dropping of International would not confer jurisdiction upon the Court.

Because, therefore, the plaintiffs have not pleaded the requisite jurisdictional allegations, and the complaint is not susceptible of curative amendment, this Court is without jurisdiction of the case, and the complaint must be dismissed.

### The Labor-Management Reporting and Disclosure Act of 1959

■ Plaintiffs seek jurisdictional support for this action in the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq. The provisions of that Act are now embodied in Chapter 11 of the indicated Title, and comprise seven subchapters thereof. Section 411 of the codification constitutes a bill-of-rights for members of a labor organization, and section 412 permits any person whose rights secured by subchapter II, have been involved, to bring a civil action in a District Court of the United States for such relief (including injunctions) as may be appropriate. Venue in such an action shall be laid in the District where the alleged violation occurred or in which the principal office of the labor organization is located. Both the International and the Local in the present action are labor organizations (or parts of a single labor organization) as defined in section 402 of the codification. Every member of a labor organization is accorded, by section 411, "equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the de-

liberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by laws." In accepting membership in International and in Local 1262, the plaintiffs must be deemed to have subjected themselves to the provisions of the constitution and by-laws of International. Recognition of this subjection is expressly disclosed in the statutory section last quoted from. Since such rights are made subject to the constitution of International, the remedies for review provided by that document must be exhausted before a Federal District Court may properly be called upon for relief under section 412 of the same subchapter.

Chapter IV of the Act deals with trusteeships of subordinate labor organizations, provides for the filing of reports thereof, imposes penalties for violations of the requirements prescribed for such reporting, and, in section 462 of the codification, expressly requires that "trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and by laws of the organization which had assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." Section 464 of the same codification expressly affords to a member or subordinate body of a labor organization a new and effective remedy for any violation of the provisions of the trusteeship subchapter. Section 464(a) provides that upon the written complaint of such member or subordinate body alleging that the labor organization has violated the provisions of the subchapter, the Secretary of Labor "shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate." Venue in such actions is laid in the District in which the principal office of the labor organization is located, or in a District in which its duly authorized officers or agents are engaged in conducting the affairs of the trusteeship. The same section further provides that in any proceeding brought pursuant thereto a trusteeship established in conformity with the procedural requirements of the constitution of the labor organization and authorized or ratified after a fair hearing before such body as may be provided therein, "shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 of this title. In the latter event, the court may dismiss the complaint or retain jurisdiction of the cause on such conditions and for such period as it deems appropriate." Finally, section 466 constituting the last section of subchapter IV, provides that the rights and remedies provided by the subchapter shall be in addition to any and all other rights or remedies at law or in equity but that upon the filing of

a complaint by the Secretary of Labor, the jurisdiction of the District Court over such trusteeship shall be exclusive and its final judgment res judicata.

■ Section 464(a) appears to afford two alternate remedies to one complaining of a local trusteeship, i. e., (1) written complaint to the Secretary of Labor and an action by him thereon, or (2) a direct civil action by a member of the labor organization in the District Court for appropriate relief. The subchapter deals with trusteeships. While section 466, which forms a part of that subchapter, provides that the rights and remedies therein enumerated and prescribed are additional to any others available at law or in equity, if the Secretary proceeds upon complaint filed with him, the District Court acquires *exclusive jurisdiction over the trusteeship.* I do not construe section 464(a) as providing two coordinate alternate remedies for the review of the trusteeship of a local labor organization. On the contrary, the procedure through the Secretary of Labor affords the primary and principal remedy for the individual member of the local or for the local itself. The authorization for the bringing of a civil action by a member or the local contained in the last sentence of subdivision (a) of the section is to be construed as a supplemental and accessory method of securing complete relief where appropriate jurisdictional grounds exist for direct action by the member against the labor organization. By seeking relief through the Secretary of Labor in the District of Columbia, pursuant to section 464(a) of the Act, plaintiffs will be afforded expeditious, effective and complete relief for any cause alleged in this action to which they may be found to be entitled.

The presently moving defendants have cited to me the case of Flaherty v. McDonald, D.C.S.D.Cal., 183 F.Supp. 300, embodied in an order of Judge Mathes, a copy of which is annexed to the defendants' brief. In that case the plaintiffs were officers and members of a local and the defendants were officers and agents of the international. The plaintiffs complained of a wrongful imposition of a trusteeship upon the local by the international. More specifically, during the existence of the trusteeship, delegates to international's convention to represent the local were appointed by the trustee, instead of being elected by the local members, local funds were being expended without accounting to the membership, and defendants were planning an election to local offices from which the plaintiffs would be barred as candidates. Reliance was placed upon the bill-of-rights provisions of subchapter II of the Act,—no diversity of citizenship having been alleged. The Court there held that section 411(a) (1) of the codification did not specifically create a right to challenge removal from office pursuant to a trusteeship, or to be a candidate; and that subchapters III and IV of the Act dealing with trusteeships and elections afforded the District Court no jurisdiction over the subject matter of the plaintiffs' claim. Holding that the acts complained of took place before the effective date of the provisions of the Act invoked, the Court determined that said provisions could not be retroactively applied. The Court concluded that in the absence of diversity of citizenship, it could have no jurisdiction over a claim by local officers for loss of office control and management of a local union by the wrongful imposition and administration of a trusteeship by the international union and its officers and agents since such a claim did not arise "under the Constitution, laws or treaties of the United States."

Because personal jurisdiction was not secured over International, the provisions of section 525 of the codification of the Act relating to service of process do not modify the service requirements previously reviewed.

■ Paragraph 10 of the first cause of action in the complaint alleges that "this Court has jurisdiction pursuant to the federal statute in such cases made and provided as applied to labor unions." In paragraph 38 of the same cause of action plaintiffs allege that "where vacan-

cies exist in the officers (sic) of Local 1262, an election should be held under the direction and supervision of the Court in accordance with the Labor-Management Reporting and Disclosure Act of 1959," 29 U.S.C.A. § 401 et seq. Paragraph 24(g) of the second cause of action recites the provision of the Act requiring every international to elect its officers not less than once every five years, either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot. The pleader then alleges that the defendant International is preparing for an election in 1960, which will be in contravention of this statute. Accordingly, the plaintiffs charge that unless *this* Court appoints a receiver or master-in-equity, to supervise the *International,* the individual defendants will perpetuate themselves in power. Even if it be assumed, *arguendo*, that this Court has jurisdiction over International and of the cause or causes of action alleged against it, it is obvious that this Court may not and should not undertake, through a receiver, to assume possession of its assets and property located beyond the jurisdiction of this Court, or to direct International's activities beyond this Court's territorial jurisdiction.

I have not overlooked the remaining grounds urged by the defendants for the dismissal of the complaint. The principal cause of the plaintiffs' dissatisfaction is the existence and conduct of the trusteeship of Local 1262. That trusteeship was created and the trustee appointed by the president of International acting under the authority of its constitution. There is also reposed in Suffridge discretion to continue the trusteeship and ultimately to pass upon the propriety of the acts of his appointed trustee, as well as upon those of the deputy whom the president authorized the trustee to appoint. Since this Court is without personal jurisdiction over the president of International or of the trustee of the Local, by reason of the failure of sufficient service of process, these two individuals, at least, are indispensible

parties if the plaintiffs are to be relieved of the trusteeship or are to eliminate claimed abuses in the conduct thereof. This Court, in its discretion, may dismiss an action for non-joinder of indispensible parties and I find that such non-joinder exists in this case. See Brillhart v. Excess Insurance Co., 1942, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620; Alabama State Federation of Labor, Local Union No. 103, United Broth. of Carpenters and Joiners of America v. McAdory, 1945, 325 U.S. 450, 471, 65 S.Ct. 1384, 89 L.Ed. 1725.

Defendants charge the plaintiffs lack "clean hands" in this case because after the action was instituted certain press publicity appeared incorrectly reporting certain phases of the litigation. Defendants contend that these inaccuracies are chargeable to the plaintiffs or their agents. I do not so find.

An order for dismissal of the complaint in conformance with the above opinion may be presented.