CLEVELAND ORCHESTRA COMMIT-
TEE et al., Plaintiffs-Appellants,

v.

CLEVELAND FEDERATION OF MUSI-
CIANS, LOCAL NO. 4, AMERICAN
FEDERATION OF MUSICIANS, AFL–
CIO, Defendant-Appellee.

No. 14613.

United States Court of Appeals
Sixth Circuit.

April 30, 1962.

Joseph E. Finley, Cleveland, Ohio, (Charles R. Miller, Cleveland, Ohio, on the brief), for appellants.

Mortimer Riemer, Cleveland, Ohio, for appellee.

Before MILLER, Chief Judge, and McALLISTER and O'SULLIVAN, Circuit Judges.

McALLISTER, Circuit Judge.

Appellants are, and represent, musicians employed in the Cleveland Symphony Orchestra, by the Musical Arts Association. They are also members of the musicians' union, Cleveland Local No. 4 of the American Federation of Musicians, AFL–CIO.

Appellants sought to prevent the union from entering into another long-term collective bargaining agreement with the Musical Arts Association, claiming that they had the right to ratify or reject such bargaining contract, and that the denial of such right by the union constituted discrimination against them and denial of equal rights as union members. Appellants also alleged that the union and its officers were interfering with their right to bring legal action, through harassment, coercion, and illegal disci-

plinary action. Their petition was filed under Title 29 U.S.C.A. § 411.[1]

Appellee union's answer set forth that appellants had failed to exhaust their internal hearing procedures within the union prior to the bringing of their action; that the district court had no jurisdiction; and that appellants failed to state a claim against appellee upon which relief could be granted.

Upon appellee's motion for summary judgment, the district court held that appellants were not discriminated against by the union, and were not denied their equal rights by not being permitted the right of ratification or rejection of collective bargaining agreements executed by the union on their behalf. The court, accordingly, entered a summary judgment in favor of the union.

The single issue presented is whether the union members who are in the Cleveland Symphony Orchestra are denied rights under Title 29 U.S.C.A., § 411, because they are not given the right to ratify or reject collective bargaining agreements executed by the union on their behalf.

█ █ The pertinent facts, which are not in dispute, are as follows: Since 1918, the union has been the recognized collective bargaining agent for the symphony musicians, whose terms and conditions of employment are set forth in a comprehensive collective bargaining agreement heretofore executed between the union and the Musical Arts Association. The union's International Constitution defines a symphony orchestra, and establishes the union as the bargaining agent of the members of the symphony orchestra. The union's by-laws set forth the procedure whereby all union members may vote at a regular or special meeting to repeal or amend any part of its constitution, by-laws, or wage scale. The wage scale is a determination by the union members of wages to be paid to musicians for hire by hour and engagement. When one becomes a union member, he agrees to be governed by the union constitution, by-laws, and rules, not inconsistent with rights and procedures established by the Act; and the constitution and by-laws of the union express the terms of the contract which define the privileges secured and the duties assumed by those who become members. Polin v. Kaplan, 257 N.Y. 277, 177 N.E. 833.

█ Section 411 of the Act accords each member of a labor organization equal rights and privileges with such organization to nominate candidates, vote in elections or referendums, attend membership meetings, participate in the deliberations, and vote upon the business of such meetings, subject to reasonable rules and regulations in the organization's constitution and by-laws. In accepting membership, the members subject themselves to the provisions of the constitution and by-laws; and recognition of this subjection is expressly disclosed in the above section of the statute. Rizzo v. Ammond, 182 F.Supp. 456, 470 (D.C.N.J.). By becoming a member of a union, the worker, in effect, makes a contract that he is to be governed by the constitution and by-laws of the organization. Smith v. General Truck Drivers, 181 F. Supp. 14, 17 (D.C.Calif.).

Certain of the background of the present controversy is illuminating. In 1954, appellants sought adoption, by the union, of a resolution to amend the by-laws, which would require the submission of collective bargaining contracts to a vote of the members of the local, before their execution with the Musical Arts Association. This resolution was defeated, and, thereafter, in 1959, during the existence of the last prior contract between the union and the Musical Arts Association,

1. Title 29 U.S.C.A. 411(a) (1) provides:
  "*Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws."

appellants again presented demands which would require the union to obtain the approval of the Orchestra before entering into bargaining agreements or signing any contracts with the association. In reply to such demands, the executive board of the union stated that it would consult with appellants during the negotiations for a collective bargaining agreement, and would adopt appellants' suggestions and recommendations, which in the judgment of the officers of the union would serve the best interests of all of the members of the union. The union executive committee, however, refused to accept, as a prior condition, approval by the symphony musicians of such bargaining contract on the ground that it would be inconsistent with the authority of the union as it authorized collective bargaining of the symphony musicians. Subsequently, in December 1960, appellants were notified that the officers of the union "may extend the privilege of ratification of new contracts by secret ballot to members of the Cleveland Symphony Orchestra, provided, however, that there exists a complete mutual understanding and agreement," that the privilege of ratification was within the discretion of the union; and appellants were informed that such privilege, extended to the members of the orchestra, was not to be considered a precedent or waiver of the union's authority as the sole collective bargaining agent for the members of the musicians' union. Appellants, however, rejected this proposal.

The reason why appellants claim that they have been discriminated against and denied their equal rights as members under the statute is because of different treatment accorded them as members of the symphony orchestra, as compared with other musicians in the union.

This different treatment arises out of the fact that most of the members of the musicians' union work under, and are bound only by the wage scale agreed upon by the union members themselves. This wage scale is not a part of a collective bargaining agreement, but represents the determination of the members of the union that they will not work for less than the wages fixed in such scale, if anyone seeks their services for the categories of engagements specified therein. The "Wage Scale and Directory" are set forth in a booklet, which shows extensive schedules of rates of pay, by the hour and engagement, for almost every type of employment for musicians, such as hotels, night clubs, ballrooms, circuses, concerts, grand opera, funerals, ice shows, parades, symphony concerts, and numerous other designations.

Among these diverse employers are found few collective bargaining agreements, inasmuch as in such cases the musicians work merely according to the wage scale. As an instance, the restaurant owner who hires a three-man combination for Saturday night wants to know how much the cost will be for that particular work. In this, and similar engagements, the price is the same to all employers in each category specified in the wage scale, and any musician who takes a particular job knows the rate at which he will work. The wage scale, which also contains certain rules, does, for most of the members of the local union, what the collective bargaining agreement does for those working under such a contract. Of course, a member of the symphony orchestra might occasionally perform for an evening, or even more frequently, in musical programs other than those of the symphony, and, as a union member, he would, for such performances, be subject to the wage-scale provisions. But, on the whole, it can be said that the symphony musicians perform for a season rather than an engagement of a day, week, or month. The symphony musician is employed under a comparatively long-term agreement; and the collective bargaining agreement executed by the union on behalf of the symphony musicians is not, in any sense, part of the union wage scale determined by joint action of the union members.

In brief, then, the complaint of the symphony musicians is this: that all the musicians in the union have the

right to approve or reject the wage scale under which most of them render their services; but the symphony musicians are denied the right to approve or reject the terms of the collective bargaining agreement under which they render their services. The symphony musicians, therefore, claim that they are thereby discriminated against and denied their equal rights as members, under the statute.

There is plainly a marked difference between the right of union members to approve or reject a wage scale and the right to approve or reject a collective bargaining agreement. As to the wage scale, the union members agree on the minimum rates of pay under which they will perform services. In the determination of a wage scale, there is no agreement between the musicians and their employers and, accordingly, there is no negotiation of a collective bargaining agreement by the union on their behalf. It is an entirely unilateral determination by the union members themselves. Moreover, under the by-laws of the union, the union members may, at a meeting, repeal or amend any part of the wage scale, under specified conditions.

With regard to the members of the symphony orchestra, the situation is altogether different. Here there is an employer to be bargained with. The rights and wages of the symphony musicians are subject to negotiation by the union as their collective bargaining agent, in dealing with the orchestra management. Such a collective bargaining contract provides for weekly salaries, grievance machinery, detailed arrangements for touring engagements, and many other aspects of the conditions under which members of a symphony work for the orchestra management. Moreover, the union constitution provides: "The home Local shall be the bargaining representative of the members of a symphony orchestra." However, symphony musicians, according to the union constitution, are free to make individual contracts with the orchestra management, as long as such contracts provide for, at least, the minimum scale for symphony musicians provided by the contract between the orchestra management and the union.

While the union negotiates and executes the collective bargaining contract with the orchestra management on behalf of the symphony musicians, without referring the agreement to such musicians for approval or rejection, it nowhere appears that the symphony musicians suffer disparagement, discrimination, hardship, or injustice thereby. Their complaint goes only to the claimed right of the option to approve or reject. As observed, the right is reserved to a symphony musician to make a separate contract with the orchestra management for higher pay than that provided in the bargaining contract whenever he can secure such additional remuneration; and it may be noted that a musician who has performed in a symphony, and a musician who has performed only under the wage scale, may both change the categories under which they work. The symphony musician, for instance, may become the chief performer of a hotel orchestra; and the musician formerly performing only under the wage scale, may become a member of the symphony. We do not view the differences between work performed under the wage scale, and under the collective bargaining contract, as being merely differences of form of the same character of employment. In one case, the musicians work under conditions that they have unilaterally agreed upon; in the other, they work under a contract with an employer. Under a collective bargaining contract, it is contemplated that the employer contracts with the representatives of the employees, as was done in this case. As to the work performed under the wage scale, the employer contracts with the employees. We find no deprivation of any legal rights of the symphony musicians as a result of not permitting them to approve or reject the contract made on their behalf by the bargaining agent authorized and directed to act for them in accordance with the union by-laws.

As the district court held, there is no provision in Title 29 U.S.C.A., § 411(a)

(1), which requires that a labor union submit proposed agreements to its membership or any segment thereof for prior ratification or rejection and, further, the statute does not require or provide that members of a labor organization have the right to vote on the business of negotiating, executing, and approving contracts of employment, unless such negotiation, execution, and approval might become the business of a membership meeting, which is not, here, the case. Under the union by-laws, no member is given the right to vote with respect to the acceptance or rejection of a contract of employment—although the membership may ratify or reject proposed wage scales as distinguished from employment contracts. The only way the members, or any groups of members, might secure the right to vote upon the acceptance or rejection of a collective bargaining agreement would be by amendment to the union by-laws. As heretofore said, each member, by joining the union, thereby enters into an agreement that he shall be governed by the union constitution and by-laws.

Title 29 U.S.C.A., § 411(a) (1), guarantees equal rights and privileges to union members; but this guarantee is limited to those rights specifically set forth therein: "to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings; and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." None of these specified rights is, here, in question. The claim that appellants were denied fair representation was not an issue on the trial, nor is it an issue raised on appeal in the statement of questions involved, as is required by Rule 16 of this Court, 28 U.S.C.A., and, in any event, after our examination of the briefs and arguments, we are of the opinion that the contention is not meritorious.

In consideration of the foregoing, the judgment of the district court is affirmed.

O'SULLIVAN, Circuit Judge (concurring).

It is my opinion that plaintiffs, members of the Cleveland Symphony Orchestra, are denied equal rights and are discriminated against by the Union of which they are members. I concur in affirmance, however, because Title 29 U.S.C.A., § 411(a) (1), upon which plaintiffs place their entire reliance for the remedy sought, does not provide such remedy.

Under the Union's constitution and bylaws, members of the Cleveland Symphony Orchestra have no right to approve or reject whatever collective bargaining agreement may be made for them by the union officials. All members of the Union, including the members of the Symphony Orchestra, have the right to vote upon the terms and conditions of the so-called "Wage Scale and Directory." This latter writing is a fairly comprehensive document covering not only wages but other terms and conditions of employment for all members of the Union except those employed as members of the Cleveland Symphony Orchestra. When such a union member is engaged to work, the terms of the "Wage Scale and Directory" become, for all practical purposes, a part of the contract between him and his employer. Because of the transient nature of the ordinary musician's employment, it is impractical for a separate bargaining session between employee and employer to precede each engagement. Under the practice involved, the employer must accept the "Wage Scale and Directory" along with the services of the musician. For all practical purposes, then, the terms of the "Wage Scale and Directory" become a part of the contract between the union musician and his employer. Such arrangement is equivalent, in substance, to a collective bargaining agreement. Accordingly, all union members, other than musicians during their performance in the Symphony Orchestra, have some control of the terms and conditions of their employment. Equivalent control is denied the symphony artists. Inequality and discrimination result.

· Appellants, however, appear to concede that except for the proscriptions of § 411(a) (1), there would be nothing illegal in their being excluded from the right to ratify or reject a collective bargaining agreement. Their whole reliance is on such section, sometimes referred to as the "Bill of Rights" section of the statute. That section, denominated "Equal Rights," defines what equal rights are protected, viz., *"to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings * * *."* Inasmuch as the making of a collective bargaining contract for the symphony artists is, under the laws of the Union, the exclusive prerogative of the officers, such contracts do not become the subject matter of elections or referendums, nor any part of "the business of such (membership) meetings."

· I concur in affirmance because the deprivation of equal rights and the discrimination visited upon the symphony artists are not outlawed by § 411(a) (1).