**EXECUTIVE BOARD, LOCAL UNION NO. 28, I.B.E.W., Patrick J. Gallagher, Chairman, Donald L. Behr, Member, William J. Ross, Member, William J. Knoppel, Member, Vernon H. Landgraf, Member, and Louis E. Becker, Member,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Charles S. Goidel, Individually, and as International Representative, I.B.E.W., and Edward G. Rost, Jr., Individually, and as Financial Secretary of Local Union No. 28, I.B.E.W.**

Civ. A. No. 12072.

United States District Court
D. Maryland.
May 11, 1960.

Patrick A. O'Doherty, O'Doherty, Gallagher & Hegarty and Hamilton O'Dunne, Baltimore, Md., for plaintiffs.

Thomas E. Bracken and James B. Murphy, Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

This is a suit brought under the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 519, Title III, sections 302 and *303*; Title V, section 501, 29 U.S.C.A. § 401 et seq. (Act), to terminate the trusteeship of Local Union No. 28, International Brotherhood of Electrical Workers (Local Union) and for an accounting of Local Union's funds. The plaintiffs are seven members of the Local Union, comprising its Executive Board. The defendants are the International Brotherhood of Electrical Workers (I.B.E.W.), Charles S. Goidel (Goidel) individually and as International Representative of I.B.E.W.; and Edward J. Rost, Jr. (Rost), individually and as Financial Secretary of Local Union.

The complaint alleges that the Executive Board has the duty to supervise and oversee the distribution of the funds of Local Union; to approve bills incurred by Local Union and to act as trustee of its funds. At a meeting of the Executive Board on September 12, 1958, the then President of Local Union appeared before the Executive Board, and complained that Rost was acting in violation of the By-Laws of Local Union in that he was paying bills without the approval of the President or Executive Board; expense monies were being paid

by Rost to himself and to Assistant Business Managers without submission to or approval of the Executive Board; and that the monies of Local Union were not being deposited as required by the By-Laws. The Executive Board found the charges to be valid, adopted the President's recommendation that past violations be excused, but instructed Rost to abide by the Constitution and By-Laws in the future. Rost said he would continue to conduct his office as in the past. He did so continue, and on December 15, 1958 the Executive Board again ordered him to comply with the By-Laws. He refused, and on January 31, 1959, the President of Local Union wrote to the International Executive Council of I.B.E.W. requesting an investigation of the financial affairs of Local Union. On February 9, 1959 the International President of I.B.E.W. sent his representative, Goidel, to Baltimore to confer with the Local Union officers. Goidel advised these officers that "he was assuming supervision of the Local Union." Several days later Goidel orally ordered the Local Union President to sign checks for "unaccountable expenses" of Rost and the Assistant Business Managers. When the President refused to sign without a written order, Goidel removed him from office and replaced him with a personal appointment. On March 29, 1959, Goidel suspended meetings of the Executive Board.

Since the assumption of jurisdiction by Goidel, the members of the Executive Board and members of Local Union have requested an accounting of Local Union funds, but Goidel has refused any accounting. The elected President of Local Union was suspended for refusing to sign checks, and members have been summarily suspended for requesting an accounting. Goidel stated at a Local Union meeting that the monies of Local Union "were being deposited in a local bank, subject to his order only", which petitioners allege to be a violation of sections 303(a) (2) and 501(a) of the Labor-Management Reporting and Disclosure Act of 1959.

The complaint further alleges that at the July 1959 meeting of Local Union, Goidel "advised the membership that they were going to operate under a new set of By-Laws that he promulgated and that he would tolerate no discussion of their wisdom. The membership at the following meeting forced a vote on the proposed new By-Laws and rejected them by a vote of approximately 490 to 5. Thereupon the representative said that he would see that the new By-Laws would be placed in effect regardless of the expression of the membership and thereafter suspended Local meetings."

The complaint further alleges that Goidel attempted to increase the dues by more than 100% without regard to the Constitution and By-Laws, his effort being withdrawn only after the United States District Court for the District of Maryland had been petitioned for an injunction; that he had caused to be filed with the Secretary of Labor alleged changes in the By-Laws which had not been passed upon by the membership of Local Union; and that Goidel has refused to meet with the Executive Board to review the financial position of Local Union, although he alleges there is an operating deficit of $6,500 a month.

It is further alleged that Goidel in a financial report filed in January 1960 disclosed that he had merged the Treasurer's Fund with that of the Financial Secretary, in violation of the By-Laws; and that the membership of Local Union at a meeting in January, 1960, referred this report to the Executive Board for investigation, study and recommendations, but Goidel declined to meet with the Executive Board. At a meeting of March 4, 1960, the members unanimously authorized the Executive Board to "take such steps, including legal action," as might be necessary to investigate and study the financial condition of Local Union. The complaint further alleges:

"25. Your petitioners allege that the International Brotherhood of Electrical Workers are in violation of the Trusteeship Provisions of Title III, section 302 of the Labor

Management Reporting and Disclosure Act of 1959 in that it is continuing to assume Trusteeship of Local Union No. 28 without satisfying the requirement to maintain a trusteeship as set forth in said Title and section.

"26. The International Brotherhood of Electrical Workers filed with the Commissioner of Bureau of Labor-Management Reports, United States Department of Labor, a report dated October 14, 1959, and signed by the International President and International Representative alleging that the said trusteeship was being continued because 'factionalism in the Local Union has prevented the officers thereof from properly organizing the electrical industry' in its jurisdiction.

"27. The trusteeship provision of the said act, section 302 provides that a trusteeship may be maintained only 'for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.'

"28. Your petitioners aver that 'factionalism', if it did exist—and this your petitioners deny, is not a sufficient cause to deliver up Local Union No. 28 autonomy to International control."

On the day their answer was due, defendants requested an additional twenty days, but in view of the nature of the case the court granted only an additional six days. The defendants have filed a motion to dismiss, alleging seven grounds. The motion was heard on April 29, 1960, at which time three additional grounds were stated. The parties were allowed five days for the filing of briefs.

The grounds stated in the motion to dismiss will not require extended discussion. One of the grounds advanced at the hearing is more serious, although the court entertains no doubt as to the correct answer.

Grounds Alleged in Motion.

1. Failure to state a claim upon which relief can be granted.

The only point seriously argued or briefed with respect to this ground was that the complaint failed formally to allege that Local Union and I.B.E.W. are labor organizations within the meaning of the Act, or that they are engaged in an industry affecting commerce. Counsel for plaintiffs orally so alleged, and the court granted leave to amend the complaint formally so to allege.

█ █ Whatever the actual merits, or lack thereof, may be, the allegations of the complaint, which on a motion to dismiss must be taken as true, state conduct, or misconduct, giving rise to causes of action under the Act.

█ 2. and 3. Lack of diversity of citizenship (28 U.S.C.A. § 1332) or of any matter arising under the Constitution or laws of the United States (28 U.S.C.A. § 1331).

As the court finds that jurisdiction under the Act exists as to the allegations of the complaint as amended, it is immaterial whether or not jurisdiction otherwise would exist.

█ 4. That an accounting cannot be had of funds coming into defendants' hands since June 1958, since the Act became effective only on September 14, 1959, and is not retroactive. Flaherty v. McDonald, D.C.D.Cal.1960, 183 F.Supp. 300; Highway Truck Driver's and Helpers Local 107 v. Cohen, D.C.D.Pa.1960, 182 F.Supp. 608.

Certainly, however, if the facts justify it, an accounting under the Act could be had for all funds coming into defendants' hands *after* September 14, 1959; and probably for all funds in their hands as of the effective date of the Act.

█ 5. Failure to show good cause and to obtain leave of court.

Section 501(a) of the Act recites the fiduciary responsibility of officers of la-

bor organizations. Section 501(b) provides for suit for an alleged violation of such duties. One condition of suit is:

"No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte."

The complaint was verified. If true, its allegations constitute "good cause." At the hearing, counsel moved for "leave of court" to proceed. Such leave was given. The court did not require that the complaint be refiled after granting leave to proceed. No objection was or is made to such lack of formality. Defendants argued that such suits should apply only to "pilfering, robbing, misusing and misappropriation" by union officials of union funds. Without deciding that suits under section 501 should so be limited, the complaint alleges acts that would at least be misuse of union funds.

6. That Rost "is not now Financial Secretary" of Local Union. The marshal's return shows service on March 28, 1960, on Rost as "Financial Secretary of Local Union No. 28, I.B.E.W." and on Rost individually. This ground of the motion is not tenable.

7. That service on defendants I.B.E.W. and Goidel, International Representative and individually, has not been made and effected.

Aside from the question of whether or not the application for extension of time for pleading, and the motion as filed, are general appearances, defendants' counsel at the hearing admitted that Goidel had properly been served. The marshal's return shows service upon Goidel "Individually and as International Representative I.B.E.W." by service on Rost. Under section 605 of the Act, service "upon an officer or agent of a labor organization in his capacity as such shall constitute service upon the labor organization."

The grounds alleged in the motion to dismiss are without merit.

Additional Grounds to Dismiss Raised on Hearing.

8. Claimed jurisdiction under sections 302 and 303 of the Act.

Section 1 of the complaint invokes jurisdiction under sections 302 and 303 of the Act. Obviously section 304 was intended instead of 303. Leave so to amend by interlineation was requested and granted.

9. Parties plaintiff.

The complaint purports to be brought by the Executive Committee of Local Union, who are members of the Local Union. Probably the Executive Committee is not a "member or subordinate body of a labor organization" under section 304(a) of the Act. Leave to amend the complaint to allege that plaintiffs sued as individual members of Local Union as well as the Executive Committee thereof, was requested and granted.

10. Exclusive jurisdiction of Secretary of Labor in suit under section 304 (a) of the Act.

Section 304(a) of the Act reads as follows:

"(a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this title (except section 301) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this title (except section 301) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

Defendants contend that under this section, suit can be brought only by the Secretary of Labor, or after the fact of a violation has first been found by the Secretary of Labor in an administrative proceeding. In this contention they have the support of the only two so-far reported decisions of the United States District Courts; Flaherty et al. v. McDonald et al., D.C.S.D.Cal.1960, 183 F.Supp. 300, and Rizzo v. Ammond et al., D.C.D.N.J. 1960, 182 F.Supp. 456.

In Flaherty, the plaintiffs were officers and/or members of Local 2869. They alleged that the trusteeship under attack had been imposed for reasons not authorized by section 302 of the Act; that no meetings of the Local had been held, no audit of funds had been made and that funds had been expended in violation of the Union Constitution. Judge Mathes held that the court was without jurisdiction because plaintiffs had not exhausted the administrative remedies of section 304(a). He said, in part (183 F.Supp. at page 305):

"(4) Since Sec. 304(a) provides both an administrative and judicial remedy for violations of Title III of the 1959 Labor Act, in order to determine *whether the remedies follow one another in sequence or are concurrent*, this Court must first look for guidance to the principle that a Federal court has only the jurisdiction which the Congress has expressly conferred upon it (U.S.Const. art. III; see Lockerty v. Phillips, 1943, 319 U.S. 182, 187–188, 63 S.Ct. 1019, 87 L.Ed. 1339), and next to its duty as 'a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief' (Eccles v. Peoples Bank, 1947, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784; see: Allen v. Grand Central Aircraft Co., 1954, 347 U.S. 535, 540, 74 S.Ct. 745, 98 L.Ed. 933; Petroleum Exploration v. Public Service Commission, 1938, 304 U.S. 209, 218–219, 58 S.Ct. 834, 82 L.Ed. 1294; and Sierra Drawn Steel Corp. v.

Gregory, D.C.S.D.Cal.1953, 115 F. Supp. 545, 547), and finally to the 'long settled-rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted' (Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638; see: Macauley v. Waterman Steamship Corp., 1946, 327 U.S. 540, 543–544, 66 S.Ct. 712, 90 L.Ed. 839; Gorham Mfg. Co. v. State Tax Commission, 1924, 266 U.S. 265, 269–270, 45 S.Ct. 80, 69 L.Ed. 279; and Sierra Drawn Steel Corp. v. Gregory, supra, 115 F.Supp. at page 547; see also 3 Davis, Administrative Law Treatise 20.01, 20.03 (1958)).

"(5) the language of section 304 (a) in providing that '(a)ny member * * * affected by any violation of (Title III)' may bring suit must lead to the logical supposition that a violation must have been determined to exist before suit may be brought, and the only procedure for determination of such violation is provided for also in § 304(a) by filing a complaint with the Secretary of Labor, who may then investigate the alleged violation and bring suit if he has 'probable cause to believe that such violation has occurred' (see S. Rep. No. 187, 86th Cong., 1st Sess. (1959) quoted in U.S.Code Cong. & Admin. News, 86th Cong., 1st Sess. at p. 2335 (1959); but see H.R.Rep. No. 741, 86th Cong., 1st Sess. (1959) quoted in U.S.Code Cong. & Admin. News, 86th Cong., 1st Sess. at 2437– 2438, 2463, 3135 (1959));

"(6) since '(t)he very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceed-

ings' (Aircraft & Diesel Equipment Corp. v. Hirsch, 1947, 331 U.S. 752, 775, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796), and since it cannot be assumed that the Secretary of Labor 'would fail in the performance of any duty imposed \* \* \* by the Constitution and laws of the United States' (Yakus v. United States, 1944, 321 U.S. 414, 434, 64 S.Ct. 660, 672, 88 L.Ed. 834), but on the contrary will perform his duties as required by § 304(a) of the 1959 Labor Act, it follows that plaintiffs have not exhausted the administrative remedies provided for in § 304 (a) of the 1959 Labor Act (see Aircraft & Diesel Equipment Corp. v. Hirsch, supra, 331 U.S. at pages 777–781, 67 S.Ct. at pages 1505–1507; Macauley v. Waterman Steamship Corp., supra, 327 U.S. at pages 543–544, 66 S.Ct. at pages 713–714; Myers v. Bethlehem Shipbuilding Corp., supra, 303 U.S. at pages 50–51, 58 S.Ct. at pages 463–464; and Gorham Mfg. Co. v. State Tax Commission, supra, 266 U.S. at pages 269–270, 45 S.Ct. at page 81), and it will therefore be time enough to seek the aid of a court of equity when those remedies have been exhausted (United States v. Illinois Central Ry. Co., 1934, 291 U.S. 457, 463–464, 54 S.Ct. 471, 78 L.Ed. 909);"

The same issue was presented in the Rizzo case. Judge Wortendyke was, however, also concerned about the nonjoinder of indispensable parties defendant, and questionable jurisdiction over the International. With specific reference to the interpretation of section 304(a), 29 U.S. C.A. 464(a), he said, 182 F.Supp. at page 472:

"Section 464(a) appears to afford two alternate remedies to one complaining of a local trusteeship, i. e., (1) written complaint to the Secretary of Labor and an action by him thereon, or (2) a direct civil action by a member of the labor organization in the District Court for appropriate relief. The subchapter deals with trusteeships. While section 466, which forms a part of that subchapter, provides that the rights and remedies therein enumerated and prescribed are additional to any others available at law or in equity, if the Secretary proceeds upon complaint filed with him, the District Court acquires exclusive jurisdiction over the trusteeship. I do not construe section 464(a) as providing two coordinate alternate remedies for the review of the trusteeship of a local labor organization. On the contrary, the procedure through the Secretary of Labor affords the primary and principal remedy for the individual member of the local or for the local itself. The authorization for the bringing of a civil action by a member or the local contained in the last sentence of subdivision (a) of the section is to be construed as a supplemental and accessory method of securing complete relief where appropriate jurisdictional grounds exist for direct action by the member against the labor organization. By seeking relief through the Secretary of Labor in the District of Columbia, pursuant to section 464(a) of the Act, plaintiffs will be afforded expeditious, effective and complete relief for any cause alleged in this section to which they may be found to be entitled."

■ Despite the greatest respect for the stature of the judges who decided the Flaherty and Rizzo decisions, this court is constrained to a different conclusion. Upon (i) the clear language of section 304(a), (ii) the need for alternative methods of procedure, (iii) the legislative history of the Act, and (iv) the construction placed upon the Act by the Secretary of Labor in his interpretative bulletins, this court is of the opinion that— although the Secretary of Labor may bring a suit for violations of the trusteeship provisions of Act (in which event "the jurisdiction of the district court over such trusteeship shall be exclusive

* * *," section 306)—unless and until the Secretary of Labor does so sue, "any member * * * affected by any violation" (except of section 301) "may bring a civil action in any district court of the United States having jurisdiction of the labor organization * * *."

(i) Language of the Act.

To the court, the language is clear. Had it been intended to make the Secretary of Labor the sole enforcing medium, the most elementary draftsmanship could have made this crystal clear and unmistakable (see legislative history, infra).

Moreover, the argument (in Flaherty) that the provision that any member affected by any violation may bring suit is qualified by the condition precedent that such a violation must have been determined by the Secretary of Labor to exist is self-defeating. Under section 304(a) if the Secretary merely finds "*probable cause* to believe that such violation has occurred" (not that he finds such violation as a *fact*) "he *shall*" (not *may*) bring suit. Therefore, if the Secretary of Labor must find that a violation has occurred before a member may sue, a member never may sue, and the purported authorization of such member suit would be nugatory and misleading. Under the theory of Flaherty, and the provisions of the Act, if the Secretary of Labor finds a violation, *he* must sue, and ergo, the member cannot; if the Secretary of Labor fails to find a violation, then under Flaherty, there has been no determination by the Secretary of Labor of a violation "before suit may be brought", and ergo, again, the member cannot sue.

The conclusion in Rizzo that the right of a member to sue is "supplemental and accessory" to that of the Secretary of Labor is also unclear to this court. If, as the Act says, suit when brought by the Secretary of Labor is "exclusive" in trusteeship actions, there is nothing to supplement or accede. If suit by the Secretary of Labor is not exclusive, again there is nothing to supplement or accede.

(ii) Justification of Alternative Remedies

There is a very pragmatic justification for the provision for suits by the Secretary of Labor in trusteeship cases, or in the absence of such suit, by the members of the labor organization. Upon the written complaint of "any member" of a labor organization alleging violations (except of section 301) "the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied *he shall, without disclosing the identity of the complainant*" bring an appropriate civil action. In the alternative—no such complaint having been made to the Secretary of Labor —"any member * * * affected by any violation" (except of section 301) may bring an appropriate civil action.

A cautious, timid, or financially poor member of a labor organization may therefore rely completely, and anonymously, upon the Secretary of Labor. A more brash, imprudent [1], or financially better-off member need not first invoke the aid of the Secretary of Labor.

(iii) Legislative History.

A review of the legislative history of the Labor Management Reporting and Disclosure Act unmistakably shows that two coordinate, alternative remedies exist for redress of violations under a trusteeship.

As a result of a determination by Congress that there was a need for reform legislation in the labor-management field, the Senate passed S 1555 (the Kennedy-Ervin Bill). In the trusteeship provision of the Senate Bill, a union member was given a choice between suing in the State courts under the common law or proceeding through the Secretary of Labor under the bill. There was no provi-

1. The provision that suit by the Secretary of Labor shall be "without disclosing the identity of the complainant" is clearly advertent. Suits and proceedings in this court have clearly demonstrated that attempted exercises of supposed rights under the Act may be the subject of disciplinary proceedings leading to the expulsion of recalcitrants, with loss of union status and rights.

sion in the bill for a direct action by an individual union member in the Federal Courts. Senate Report 187 accompanied the bill; and in the legislative history set forth in the Report the following pertinent paragraph appears:

"Enactment of the bill will *not affect the right of a local union or its members to challenge a trusteeship in the State courts*. Section 206 explicitly preserves existing rights and remedies except that the final judgment in any suit brought by the Secretary of Labor will bind both the union and the members. Individual union members will therefore have a choice between suing in the State courts under the common law or invoking the provisions of the Federal statute. *On the other hand, suits under the Federal statute will be confined to action brought by the Secretary of Labor.*" 1959 United States Code Congressional and Administrative News, page 2336. (Emphasis supplied).

The Senate Report's section-by-section analysis of the Senate Bill states:

"Section 206: *Makes clear that Federal suits under title II are possible only upon suit initiated by the Secretary of Labor.* All other rights and remedies at law or in equity are specifically preserved except that when the Secretary files a complaint under this title, the Federal court's jurisdiction is to be exclusive and the result res judicata." 1959 United States Code Congressional and Administrative News, page 2363. (Emphasis supplied.)

The Senate Bill then went to the House where all but the enacting clause of the bill was struck. The House passed HR 8342. In this bill, section 304(a) was written as it now appears in the law. House Report 741 accompanying the bill states:

" * * * The restrictions upon improper trusteeships would be en-*forced* by *action* in *the district* courts of the United States. Under the bill, a union member or local

union *may* file a complaint with the Secretary of Labor, who is directed to investigate the complaint. If he finds probable cause to believe that the act has been violated, the Secretary *is to bring* a suit to enjoin the violation and secure such other relief as may be appropriate. The name of the complainant is not to be disclosed in order to protect him against reprisals. *Also any member or subordinate body of a labor organization* affected *may bring a civil action* in a district court of the United States having jurisdiction of the labor organization to prevent and restrain any violation of this title (except sec. 301) and for such other relief as may be appropriate.

\*  \*  \*  \*  \*  \*

"Enactment of the bill will not affect the right of a local union or its members to challenge a trusteeship in the State courts. Section 306 explicitly preserves existing rights and remedies except that the final judgment in any suit brought by the Secretary of Labor will bind both the union and the members. *Individual union members will therefore have a choice between suing in the State courts* under the common law *or invoking the provisions of the Federal statute.*" 1959 United States Code Congressional and Administrative News, pages 2437 and 2438. (Emphasis supplied.)

The House Report's section-by-section analysis says:

" * * * Section 304(a): Provides that upon the written complaint of a member or subordinate union alleging violation of this title (except sec. 301, which contains criminal penalties for violations) the Secretary *shall* investigate and if he finds probable cause to believe an unremedied violation has occurred, he *shall* bring a civil action in the appropriate Federal district court to restrain such violation and for other appropriate relief. The identity of the complainant shall not be di-

vulged. *Furthermore,* this section provides that *any member* or subordinate body of a labor organization affected *may bring a civil action in any Federal district court* having jurisdiction to restrain any violation of this title (except sec. 301) and for other appropriate relief.

\*    \*    \*    \*    \*    \*

"Complaint by Secretary

"Section 306: Asserts that the rights and *remedies* provided by this title shall be in *addition to any rights and remedies* at law or in equity *(Federal or State), except* that upon the filing of a complaint by the Secretary the jurisdiction of the Federal district court over a trusteeship shall be exclusive and the final judgment shall be res judicata." (1959 United States Code Congressional and Administrative News, pages 2463 and 2464—emphasis supplied).

In addition, the supplementary views submitted by Congressman Ludwig Teller, which appear on page 2500 of the 1959 United States Code Congressional and Administrative News, clearly state the reasons for giving union members a direct action in the Federal Courts. His pertinent comments are as follows:

"HR 8342 is a substantial improvement over S. 1555 (the Kennedy-Ervin bill), the Senate—passed labor-management reform bill which our committee used as a basis for its deliberations. A substantial number of the 100-odd amendments we adopted to S. 1555 came from my bill, HR 7811. Reducing the excessive powers of the Secretary of Labor, as we did in our committee bill HR 8342, is in line with our traditions which favor the diffusion of power, will save the taxpayer many millions of dollars annually without

impairing the basic objectives of the proposed law, and *will permit individuals to prosecute their own cases in the courts without having to obtain permission* of a Government agent or official to do so." (Emphasis supplied.)

(iv) Interpretive Bulletins of the Secretary of Labor.

In at least four bulletins issued in September 1959 by the Secretary of Labor construing the Act, or various aspects thereof, the Secretary has explicitly recognized the right of a member or subordinate labor organization to sue in trusteeship cases if the Secretary had not sued.[2] These instances (emphasis in all cases being supplied) are:

(a) "Summary Guide of the Labor-Management Reporting and Disclosure Act.

"[Page 4]    Title III—Trusteeship

\*    \*    \*    \*    \*    \*

"The Secretary of Labor, *upon complaint of a member, or any member alone,* may sue in Federal Court to make unions follow these rules of the Act. However, *only the Secretary,* may sue to enforce the reporting requirements. When the Secretary files a complaint, the court shall have exclusive jurisdiction. That is an *individual member could not also bring another suit, while the suit* by the Secretary is pending."

(b) "What is Required under the Law.

"[Page 5]    Additional Rights of Union Members

"If you are a union member, you are provided with other rights under other titles of the Act. You have the right to:

\*    \*    \*    \*    \*    \*

"*Sue for violation of trusteeship provisions of the Act* (except those dealing with filing of reports) *where*

---

**2.** Without any invidious reference to or intimation of any tendency of administrative agencies not outstandingly to inter- ·pret their powers narrowly, the interpretation of the agency, the Secretary of La- bor, to whom Flaherty ascribes the "initial and preliminary administrative determination" is certainly relevant and highly significant.

*a suit has not already been brought by the Secretary of Labor.* On complaint of violation of these provisions, the Secretary may (sic) sue for relief in a Federal court, but without identifying the complaining party."

(c) "Rights of Union Members
" * * * Under Trusteeships.

"[Page 8] *A member* of a union under trusteeship which is affected by violation of the ground rules established for trusteeships in the Act *has the right to bring civil action* in any Federal district court for appropriate relief, *unless a suit in* this same matter *has already been brought by the Secretary* of Labor.

"A *member may also* file a complaint with the Secretary of Labor charging a violation of the trusteeship standards. If, after investigation, the Secretary believes (sic) a violation has occurred, and has not been corrected, he can (sic) bring suit for appropriate relief without revealing the identity of the complainant."

(d) "Trusteeships: Required Reports and Legal Standards

"[Page 6] Enforcement Provisions

"The *Secretary may bring civil action* to enforce trusteeship standards. This may (sic) be done when he finds, as the result of a confidential complaint in writing by a member of a subordinate organization and after investigation, that there is probable cause to believe a violation has occurred.

"*Any member or subordinate organization may bring a civil action.*"

This court therefore finds that plaintiffs, as members of a labor organization have the right under the Act to sue for the dissolution of the trusteeship of Local Union, the Secretary of Labor not having brought suit for such purpose.

Defendants' motion to dismiss is overruled. Defendants may answer within ten days of the date of this opinion and order.