Frank **BRANCH**, Leo **Bozek**, Chester **Ciurzenski**, Jerry **Meadows**, Louis **Kiss** and Glover **Lewis**, Plaintiffs,

v.

**VICKERS, INC.**, a Michigan Corporation, International Union of Electrical, Radio & Machine Workers, AFL–CIO, an Unincorporated voluntary association; Vicker's Local 945—International Union of Electrical, Radio & Machine Workers, AFL–CIO, an Unincorporated voluntary association; Robert E. Klingensmith, Administrator, George Gaughan and John Paulussen, Assistant Administrators of Vicker's Local 945, International Union of Electrical, Radio & Machine Workers, AFL–CIO, jointly and severally, Defendants.

No. 22133.

United States District Court
E. D. Michigan, S. D.
Oct. 12, 1962.

Richard M. Goodman, Goodman, Crockett, Eden, Robb & Philo, Detroit, Mich., for plaintiffs.

A. L. Zwerdling, Zwerdling, Zwerdling & Klimist, Detroit, Mich., for all defendants, except Vickers, Inc.

Charles Wright III, John E. English, Beaumont, Smith & Harris, Detroit, Mich., for defendant, Vickers, Inc.

FREEMAN, District Judge.

This is a motion to dismiss a complaint brought pursuant to the Bill of Rights of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as the 1959 Labor Act), 29 U.S.C.A. § 401 et seq. The plaintiffs allege that the defendant, International Union, through the individual defendants, Klingensmith, Gaughan and Paulussen, who are administering Local 945 pursuant to a trusteeship or administratorship established by such International Union, violated plaintiffs' rights guaranteed them as members of the Local Union under its Constitution and By-Laws and by the 1959 Labor Act in the ratification by such Union's membership of a collective bargaining agreement negotiated by the said trustees with Vickers, Inc., a Michigan corporation, in which their seniority rights were allegedly bargained away. Vickers, Inc., has been dismissed as a party defendant with the consent of plaintiffs.

The specific acts that the plaintiffs contend constituted a deprivation of their rights guaranteed them by the Local's Constitution and By-Laws are as follows:

1. The collective bargaining agreement was ratified at a meeting of the membership held on less than 3 working days' notice posted at Vickers' plant in the City of Detroit.

2. The plaintiffs and other unemployed workers at Vickers were not given notice of the ratification meeting nor given the opportunity to attend such meeting and to vote on the collective bargaining agreement.

3. The defendants refused to conduct the voting by secret ballot, but, instead, conducted the voting by a show of hands.

4. The defendants, prior to the ratification meeting, failed to comply with the plaintiffs' requests that they be furnished with copies of the agreement, and such failure to comply by the defendants has continued subsequent to the ratification meeting.

The plaintiffs ask as relief that this Court set aside the ratification vote and order a new referendum be held pursuant to the provisions of the Local Union's Constitution, By-Laws and the 1959 Labor Act.

The defendants, in support of their motion to dismiss the complaint, contend that:

1. The plaintiffs have failed to exhaust reasonable hearing procedures available within the defendant, International Union, and that the principal and primary remedy for reviewing a trusteeship established by an International Union over a local Union consists of filing a complaint with the Secretary of Labor, pursuant to the provisions of Title 29 U.S.C.A. § 464(a), and, therefore, this Court does not have jurisdiction over the subject matter of the instant case.

2. The complaint fails to state a claim upon which relief can be granted.

3. The actions of the defendant administrators were in compliance with the 1959 Labor Act.

I. Does this Court have jurisdiction over the subject matter of the instant case?

■ Title 29 U.S.C.A. § 411(a) (4) reads in part:

"No labor organization shall limit the right of any member thereof to institute an action in any court * * *: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof."

Section 411(a) (4)'s proviso has been construed to mean "that a member of a labor union who attempts to institute proceedings before a court or an administrative agency may be required *by that court or agency* to exhaust internal remedies of less than four months' duration before invoking outside assistance." De-

troy v. American Guild of Variety Artists (C.A.2), 286 F.2d 75, at p. 78.

The defendants maintain in their brief that since the administratorship of the Local exists by virtue of a decision of the International Executive Board and that because the International Union's Constitution provides for appeal of decisions of the Board to the next convention, plaintiffs have available Union remedies which should be exhausted.

The complaint alleges the existence of a trusteeship over the Local and does not attack the validity of the trusteeship. Under these circumstances, the plaintiffs are not required to exhaust any available intra-union procedures. But even if plaintiffs were attacking the trusteeship's validity, the exhaustion of internal union remedies is a matter which should be alleged as an affirmative defense, since it is within the discretion of the Court to decide this issue in a precise situation under the authority of Detroy, where the Court at p. 78 stated:

"The statute provides that any member of a labor organization 'may be required' to exhaust the internal union remedies, not that he 'must' or 'is required to' exhaust them."

This is a matter that cannot be decided on a motion to dismiss, which is simply a method of testing the legal sufficiency of the complaint and not a device by which fact questions outside the scope of the complaint may be considered.

In further support of their contention that this Court does not have jurisdiction over the subject matter of the case at bar, the defendants vaguely maintain that § 464 of Title 29 U.S.C.A. prevents this Court from reviewing the validity of the administratorship until the plaintiffs have exhausted their available administrative remedies under such sections by citing and quoting from the cases of Flaherty v. McDonald, D.C., 183 F.Supp. 300; Rizzo v. Ammond, D.C., 182 F.Supp. 456. In answer, the plaintiffs argue that they are not attacking the validity of the administratorship,

but the validity of the ratification of the collective bargaining agreement, and since the defendants have not filed an answer, the trusteeship's validity is not in issue, and that they are not required by § 464 to exhaust their administrative remedies, citing the case of Executive Board, etc. v. International Brotherhood of Electrical Workers, D.C., 184 F.Supp. 649. Since the plaintiffs' complaint does not attack the validity of the trusteeship, this Court concludes that if § 464 does require the exhaustion of administrative remedies in order to attack the validity of a trusteeship, the plaintiffs at this stage of the litigation need not allege or show that they have complied with such requirement.

It is this Court's opinion that at this juncture in the proceedings, it has jurisdiction over the subject matter of the instant case.

## II. Does the complaint fail to state a claim upon which relief can be granted?

■■■ The complaint does not question the validity of the trusteeship, and on oral argument plaintiffs expressly stated they were not attacking the trusteeship.

In challenging the validity of the proceedings for ratification of the collective bargaining agreement, the plaintiffs contend that the procedure surrounding such ratification violated their rights guaranteed by (1) the 1959 Labor Act, and (2) the Local Union's Constitution and By-Laws.

The pertinent section of the 1959 Labor Act involved in the instant case is Title 29 U.S.C.A. § 411(a) (1), which reads:

> "*Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and

regulations in such organization's constitution and bylaws."

In a recent decision, the Sixth Circuit Court of Appeals held:

> " * * * there is no provision in Title 29 U.S.C.A., § 411(a) (1), which requires that a labor union submit proposed agreements to its membership or any segment thereof for prior ratification or rejection and, further, the statute does not require or provide that members of a labor organization have the right to vote on the business of negotiating, executing, and approving contracts of employment, unless such negotiation, execution, and approval might become the business of a membership meeting * * *."

Cleveland Orchestra Committee et al. v. Cleveland Federation of Musicians, 303 F.2d 229, at pp. 232–233.

Consequently, the plaintiffs, under § 411(a) (1), had no right to participate in the referendum unless such might have become the business of a membership meeting.

The complaint alleges that the Local's Constitution and By-Laws give to each of its members the right to vote and participate in ratifications of all new, negotiated contracts. However, the Local is under an administratorship, the validity of which the plaintiffs do not attack in their complaint.

Title 29, § 402(h) defines a trusteeship as "any receivership, trusteeship, or other method of supervision or control whereby a labor organization *suspends the autonomy* otherwise available to a subordinate body under its constitution or bylaws." (Emphasis supplied.)

The House Committee on Education and Labor, in House Report No. 741, described the effect of a trusteeship as follows:

> "Constitutions of many international unions authorize the international officers *to suspend the normal processes of government* of local unions and other subordinate bodies, to supervise their internal activity

and assume control of their property and funds. These 'trusteeships' (or 'receiverships' or 'supervisorships,' as they are sometimes called) are among the most effective devices which responsible international officers have to insure order within their organization." (Emphasis supplied). U.S.Code, Congressional and Administrative News, 1959, p. 2435.

As some indication of the recognition of the power of a trusteeship, House Report No. 741 further stated:

"Recognizing the delicate judgments which international officers are called upon to make in imposing a trusteeship and conscious of the relative inexpertness of outsiders, the bill provides that for 18 months a trusteeship—

shall be presumed valid * * * and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302.

"The presumption is available, however, only if the trusteeship was instituted and maintained in procedural conformity with the constitution and bylaws of the international labor organization and authorized or ratified after a fair hearing either by its executive board or other body provided in its constitution. This limitation will encourage the use of fair procedure within the union. The purpose is to make it plain that an honest decision by the international officials is not to be overturned during the first 18 months of the receivership upon a question of fact or of degree or of judgment as to the necessity for imposing it. On the other hand, if dishonesty or bad faith is proved, either with respect to the establishment or maintenance of a trusteeship, the bill provides a remedy.

"The local emergency which justifies intervention by the international union can usually be corrected within a year or two. If Communists capture a local union, it may be more than a year before the international officers can build up a group of loyal trade unionists able and willing to govern their own affairs under continued harassment from the Communist minority. Unhappily the entire leadership of a local may be corrupt and its ouster may leave a vacuum not easily filled. For such reasons, there must be some provision for flexibility." U.S. Code, Congressional and Administrative News, 1959, pp. 2436–2437.

Since the autonomy and the normal processes of Government of the Local were suspended and under control of the International through its trustees, the plaintiffs had no right to participate under the Local's Constitution and By-Laws, in the referendum. In other words, the Constitution and By-Laws of a Local are suspended during the period of the administratorship.

Plaintiffs' contention that the membership of a Local may continue to exercise their right to vote after a trusteeship is created is inconsistent with the plain language of 29 U.S.C.A. § 402(h), which expressly states that a trusteeship "suspends the autonomy" of a Local. According to Webster's New International Dictionary, Second Edition, autonomy means "the power or right of self-government." The fundamental basis of self-government is the right to vote, which is suspended by the creation of a trusteeship under the Act. If the normal processes of local union self-government continue to prevail after a trusteeship is created, the efforts of the trustee might be completely nullified and would make him subject to the control of the very body he was appointed to supervise and govern.

Consequently, since the plaintiffs have no rights under either the 1959 Labor Act or the Constitution and By-Laws of

the Local Union upon which they rely, it is unnecessary to decide whether the actions of the administrators were in compliance with the Act, and defendants' motion to dismiss plaintiffs' complaint will be granted.

An appropriate order may be presented.