Donald E. **BRINK**

v.

Leo **DaLESIO** et al.

**Civ. No. Y-78-161.**

United States District Court,
D. Maryland.

April 5, 1978.

Harold Buchman, Baltimore, Md., Paul Alan Levy, Arthur L. Fox II, Washington, D.C., for plaintiff.

William A. Snyder, Jr., Bernard W. Rubenstein, Baltimore, Md., Plato Cacheris, Washington, D.C., H. Russell Smouse, Baltimore, Md., Anthony A. Abato, Jr., Towson,

Md., Luther C. West, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

### JOSEPH H. YOUNG, District Judge.

The plaintiff, Donald E. Brink, a member of the International Brotherhood of Teamsters Local 311 and Joint Council 62, has initiated this action against Leo DaLesio, an officer of the locals, charging numerous violations of fiduciary obligations allegedly owed to the union and its members. Also named as defendants are Local 311 and Joint Council 62. All three defendants have moved to dismiss the complaint against them. In considering these motions, the well pleaded facts and all inferences favorable to the plaintiff are taken as true. Fed.Rule of Civil Procedure 12(b).

The complaint, asserting jurisdiction under the Labor Management Reporting and Disclosure Act (hereinafter LMRDA), 29 U.S.C. § 501(b), and the Employee Retirement Income Security Act (hereinafter ERISA), 29 U.S.C. § 1132, contains four counts. In the first, DaLesio is accused of violating his fiduciary obligations by establishing a large personal severance trust, the corpus of which was to be paid out to him at intervals upon his retirement. The second count alleges that DaLesio, in return for certain personal benefits and privileges, had the union pay Alfred Bell and/or companies owned by Bell, excessive office rents and unreasonable fees and commissions for administering the Teamsters pension and welfare funds. The third count involves an allegation that DaLesio used union funds to buy and operate a Cadillac automobile. Finally, in count four the plaintiff asserts that DaLesio mismanaged and treated as his own the assets of the locals' bank accounts and funds, collecting multiple salaries and paying personal attorneys fees incurred during a grand jury investigation of his activities.

The plaintiff along with 43 other union members brought the charges contained in count one to the attention of Joint Council 62 and Local 311 in November, 1977. By that time, the defendant had retired and was due to receive (on January 31, 1978) a first installment of $50,000 out of an estimated $250,000 in the severance trust. The charging parties received no response from the locals until January 17, 1978, when the Joint Council informed them that only the Executive Board of Local 311 (a majority of which had previously ratified the allegedly illegal conduct of DaLesio) could hear the complaints against DaLesio. On January 19, 1978, the charging parties filed additional allegations which now form the basis of counts two through four. As of the filing of the present complaint, the locals had not responded to these charges. The plaintiff alleges that the Executive Board was planning to refuse to act on the charges against DaLesio on the grounds that he had retired and was no longer a member of the union.

Suit was filed in this Court on January 30, 1978, along with a motion for a temporary restraining order to enjoin the first payment of the corpus of the trust. The restraining order was granted and later extended to February 16, 1978, when the parties entered into a stipulation obviating the immediate need for further temporary injunctive relief.

## I. DEFENDANT DaLESIO'S MOTION TO DISMISS

DaLesio first argues that the complaint against him should be dismissed insofar as its jurisdictional basis is 29 U.S.C. § 501(b), because of a failure to satisfy certain statutory prerequisites to suit. That section of the LMRDA creates, under certain conditions, a federal cause of action in favor of individual union members for the redress of an officer's breach of a fiduciary duty described in § 501(a).

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being re-

quested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon the leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

29 U.S.C. § 501(b). The purpose of the § 501(b) prerequisites is to shield union officers from the harassment of unwarranted actions. *Dinko v. Wall,* 531 F.2d 68, 73 (2d Cir. 1976).

 The first basis on which the defendant contends that the jurisdiction of this Court is lacking is that the plaintiff neither applied for nor received the "express permission of the Court" to proceed with his action. However, a mere lack of formality in obtaining the leave of the Court to proceed is not grounds for dismissing the action. *Executive Board, Local 28 v. IBEW,* 184 F.Supp. 649, 653 (D.Md.1960). Permission may be granted after the complaint is filed, and if so, it is done *nunc pro tunc* without necessitating a dismissal and refiling of the complaint. *Sablosky v. Budzanoki,* 457 F.2d 1245, 1250 (3rd Cir. 1972); *Executive Board, Local 28 v. IBEW,* 184 F.Supp. at 653. A proper request to proceed may appear in the complaint itself. *See Sablosky v. Budzanoki,* 457 F.2d at 1249. A verification of the complaint then satisfies the requirement of a "verified application". *Horner v. Ferron,* 362 F.2d 224 (9th Cir. 1966).

An application of these principles to the present case demonstrates that the plaintiff's request to proceed, appearing in § 41 of the verified complaint, satisfies the procedural prerequisites for jurisdiction under § 501(b).

The defendant also argues that the Court lacks jurisdiction because the plaintiff cannot show that he has "good cause" to bring this suit. However, the facts now before this Court reveal the requisite "good cause." Section 501(a) establishes the standard by which this suit is to be judged.

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interest of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

· · ·

29 U.S.C. § 501(a).

 To find "good cause", the Court is required to do more than determine that the allegations of the complaint state a cause of action.

"Good cause" is an elastic concept, and is often used as a shorthand summary of the underlying policy reasons why a litigant should be able to attain a specified result. Here, two policies compete: supervision of union officials in the exercise of their fiduciary obligations and protection, through a preliminary screening mechanism, of the internal operation of

unions against unjustified interference or harassment. We believe that both these policies are served if good cause in section 501(b) is construed to mean that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence. *Dinko v. Wall*, 531 F.2d at 75; *see also Horner v. Ferron*, 362 F.2d at 229 (9th Cir. 1966). Allegations in substantial detail or the submission of sworn affidavits attesting to the truth of the charges contained in the complaint assist a court in finding good cause. Note, "Counsel Fees for Union Officers Under the Fiduciary Provision of Landrum-Griffin", 73 Yale L.J. 443, 453 (1964).

■ Here the Court has already determined, in granting the TRO, that there is "reasonable likelihood of success" on count one. The facts detailed in counts two through four of the complaint and sworn to by the plaintiff demonstrate that these claims are serious and also merit a thorough treatment in this Court.

■ The defendant suggests that the plaintiff cannot show good cause because he has failed to exhaust his intra-union remedies. It is clear that such exhaustion is not expressly required by § 501(b). *Purcell v. Keane*, 406 F.2d 1195, 1199 (3rd Cir. 1969). While some courts have considered a failure to exhaust in assessing "good cause", *see, e. g., Sablosky v. Budzanoki*, 457 F.2d at 1252, others have ignored it, *see, e. g., Horner v. Ferron*, 362 F.2d at 231. Assuming arguendo that the plaintiff's attempts for internal redress are relevant, nothing in the facts of this case weakens the conclusion that there exists good cause to proceed with this suit. Beginning in November, 1977, the plaintiff sought relief from within by appealing to both Local 311 and Joint Council 62. As of the time he filed suit, he had been given no indication that any satisfaction would be forthcoming, despite the proximity of the date that DaLesio would begin receiving the corpus of the trust. These circumstances demonstrate that for all practical purposes the avenues for relief through the locals themselves had been exhausted and lend no support to a view that good cause is lacking.

■ Alternatively, the defendant moves to dismiss each count on the basis that it fails to state a claim. As to count one, the defendant contends that because the creation of the trust was admittedly authorized by the Executive Board of Local 311 in 1966, he is immune from liability under § 501(a).

The literal language of the statute does not suggest such an immunity. Although it is an officer's duty to "manage, invest, and expend [the union's money and property] in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder", it also is his duty "to hold its money and property solely for the benefit of the organization and its members" and "to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him . . . on behalf of the organization. . . ." 29 U.S.C. § 501(a).

Moreover, it is clear that Congress did not intend to completely shield from an accounting those officers who spend union funds pursuant to some authorization. A primary purpose of the Congress in enacting § 501 was to prevent the looting of union treasuries by powerful and despotic union leaders. *See* "Interim Report of the Select Comm. on Improper Activities in Labor or Management", S.Rep. No. 1417, 85th Cong., 2d Sess. (1958); R. T. Clark "The Fiduciary Duties of Union Officials under § 501 of the LMRDA", 57 Minn.L.Rev. 437, 450 (1967). To rule that a union leader has blanket immunity from a § 501 suit when his actions are in some manner authorized would illogically insulate the most powerful and the most despotic from liability. *See* Note, "Counsel Fees", 73 Yale L.J. at 448.

The defendant points to the following statement of the late Senator John Kennedy as indicative of a Congressional intent to protect one who has acted pursuant to an authorization:

Union officers will not be guilty of breach of trust under this section when their expenditures are within the authority conferred upon them either by the constitution or by a resolution of the executive board, convention or other appropriate governing body . . .

105 Cong.Rec. 17900 (Daily Ed., September 3, 1959). The concern of the late Senator, however, was the potential for judicial intermeddling in union expenditures for political and other purposes not clearly within the union's collective bargaining function. *See* F. Dugan, "Fiduciary Obligations Under the New Act", 48 Geo.L.J. 277, 290 (1959). Such excerpts from the legislative history do not reveal an intention to immunize those who spend union funds for their own, personal gain.

Moreover, Congress expected that the principles of § 501(a) would incorporate common law precedents defining the fiduciary obligations of agents and trustees "with such adaptations as might be required to take into account the special problems and functions of a labor organization." H.R.Rep. No. 741, 86th Cong., 1st Sess., 81 (1959); A. Cox, "Internal Affairs of Labor Unions under the Labor Reform Act of 1959", 58 Mich.L.R. 819 (1960). Thus, it is instructive that according to the Restatement (Second) of Trusts, § 216, the consent of a beneficiary does not exculpate a fiduciary if the consent was not knowingly and intelligently given or if the trustee has an interest adverse to the beneficiary and the transaction was not fair and reasonable. Furthermore, since the fragile nature of union democracy is surely a "special problem" referred to in § 501(a), it would be even less appropriate to suppose that an apparent authorization automatically relieved a union officer from his fiduciary obligations. *See* Note, "Counsel Fees", 73 Yale L.J. at 457 (1964).

The defendant cites *McNamara v. Johnston*, 522 F.2d 1157 (7th Cir. 1975), as supportive of his position. In a footnote, that court stated that a showing in a § 501(b) case of a union authorization for the defendant's violation of the law "is a complete defense". 522 F.2d at 1165 n. 10. However, a fuller statement of the holding there appears earlier in the text of the opinion.

The UAW, . . ., contends that Congress looked to the union's constitution, bylaws, and resolutions to define a union officer's fiduciary responsibilities and that so long as an officer expends funds *without personal gain* in compliance with these standards, there is no breach of any duty imposed by § 501. We accept the union's construction of the statute as the correct statement of the law and reject plaintiffs' claim.

522 F.2d at 1163 (emphasis supplied).

Similarly, in *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608 (E.D.Pa.), *aff'd*, 284 F.2d 162 (3rd Cir. 1960), the court found it improper, notwithstanding a prior authorization, for a union official to have attorney fees, incurred in defending a criminal indictment, paid by a local union. *Cf., Puma v. Brandenburg*, 324 F.Supp. 536, 544 (S.D.N.Y.1971) (authorized salaries paid to union officers must be examined to see if they are overly generous).

In sum, the appropriate rule is that expenditures of union funds accruing to the personal benefit of union officers must be scrutinized under § 501 even when authorized. The basis for a finding of liability may be a defect in the authorization, *see, e. g., Rota v. Railway Clerks*, 489 F.2d 998 (7th Cir. 1973), or a showing that the expenditures were not for the benefit of the union but for the officer personally, *see, e. g., Terrazas v. Fitzsimmons*, 88 LRRM 2631, 2632 (C.D.Col.1974). Accordingly, because it cannot be said that there are no facts which could be proved to support the plaintiff's claim under count one, it cannot be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The defendant also urges the Court to defer to the arbitration provided for in the severance trust agreement to which the union and, by extension, the plaintiff are parties. However, the Court must first determine whether an issue is arbitrable. *Atkinson v. Sinclair Refining Co.*, 370 U.S.

238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Since the plaintiff attacks the validity of the trust, including the trust agreement and its arbitration clause, it is necessary for the Court to dispose of the validity issue before the arbitration clause can be deemed effective. Moreover, the language of the clause itself, providing for an arbitration of "questions arising over the interpretation or application of any of the provisions of this Agreement", does not direct arbitration of the validity of the entire agreement.

■ The defendant next challenges count two arguing that the plaintiff has failed to plead sufficient facts to support it. This argument is completely without merit. The averments that the defendant received kickbacks for promoting the locals' move to offices owned by Bell and for the allegedly excessive fees paid to Bell, if proved, show a clear infringement of the fiduciary obligations imposed on the defendant by the LMRDA and ERISA. Thus, there can be no rational contention that count two does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.Rule of Civil Procedure 8(a).

■ Similarly, devoid of merit is defendant's assertion that count three should be dismissed because the purchase and use of an automobile was authorized by a bylaw provision. First, on a motion to dismiss, the Court cannot consider the bylaw presented by the defendant which differs substantially from that offered by the plaintiff. A question of fact as to which is valid plainly appears. Moreover, as discussed herein, the authorization of a bylaw would not necessarily immunize DaLesio from liability.

■ Finally, the defendant contends that count four amounts to no more than a general prayer for relief and as such it fails to state a separate claim. However, even a cursory reading of the complaint reveals that in count four the plaintiff has charged DaLesio with using union bank accounts and funds to collect multiple salaries and to retain a lawyer for personal matters. These accusations clearly state a cause of action under 29 U.S.C. §§ 501 and 1101 et seq.

## II. DEFENDANT UNIONS MOTIONS TO DISMISS

■ The plaintiff has joined as defendants Local 311 and Joint Council 62 and both have moved for a dismissal. While it may be that a union cannot itself be accountable as a fiduciary under the LMRDA, see Pignotti v. Local 3, Sheet Metal Workers' Int. Assn., 477 F.2d 825 (8th Cir. 1973), Local 311 and Joint Council 62 are proper parties to the instant action and, therefore, will not be dismissed.

Any recovery won by the plaintiff will accrue to the union's sole benefit and a final decree in such a case must award the locals the fruits of victory. Without a joinder of the locals, a second action may be necessary to implement the result. Conversely, should the individual defendants be absolved from liability in this suit, res judicata would not necessarily shield them from another action if the locals were absent here. Thus, the specter of multiple actions and inconsistent results, as well as the union's obvious interest in the outcome, compels their inclusion. No jurisdictional problem is created by this joinder since the case involves the resolution of a federal question and the adjudication of federal rights.

■ The conclusion that Local 311 and Joint Council 62 should remain parties to this action is reinforced by the intent of Congress to create in § 501 a cause of action similar to a shareholder's derivative suit. Phillips v. Osborne, 403 F.2d 826, 831 (9th Cir. 1968). It is established that a corporation on whose behalf an action is initiated is an indispensable party to the action. Koster v. Lumbermans Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Unions have, therefore, been joined in § 501 actions in a similar manner. Yablonski v. UMWA, 145 U.S.App.D.C. 252, 258, 448 F.2d 1175, 1181 (1971); International Brotherhood of Teamsters v. Hoffa, 242 F.Supp. 246, 252 (D.D.C.1965). The analogy is particularly apt where, as here, a union officer is accused of violating fiduciary obligations

**280**

owed to the organization, a recurring factual pattern in derivative suits. 7A C. Wright & A. Miller, Fed.Prac. and Proc. § 1836; 3B J. Moore, Fed.Prac. § 23.1.16[1].

 Having determined that the locals were properly included in the suit, it is of less significance that they be designated party plaintiffs or defendants. Since the locals refused to bring the suit, they could not originally be named plaintiffs and were properly joined and served as defendants. *See* Fed.Rule of Civil Procedure 19(a); 7 C. Wright & A. Miller, Fed.Prac. and Proc. § 1606. Since no issue of subject matter jurisdiction necessitates it, the Court need not align the locals according to their true position. It is up to the unions to align themselves. *Yablonski v. UMWA*, 145 U.S. App.D.C. at 258, 448 F.2d at 1181, *International Brotherhood of Teamsters v. Hoffa*, 242 F.Supp. at 253. Under these circumstances, the Court should not decide whether the plaintiff or the defendant more properly represents the union. *Weaver v. UMWA*, 160 U.S.App.D.C. 314, 492 F.2d 580 (1973).

However, that is not to say that the unions are free to play whatever role they decide. They may support the role of the plaintiff. *Weaver v. UMWA*, 160 U.S.App. D.C. at 320, 492 F.2d at 586. If, however, they oppose the plaintiff, they cannot assist the individual defendants, for that would conflict with the policies of the LMRDA. *International Brotherhood of Teamsters v. Hoffa*, 242 F.Supp. at 253; Note, "Counsel Fees", 73 Yale L.J. 443. They must restrict any activity as a defendant to a protection of the institutional interest of the union. *Yablonski v. UMWA*, 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971); *International Brotherhood of Teamsters v. Hoffa*, 242 F.Supp. at 253; Note, "The Fiduciary Duty Under Section 501 of the LMRDA", 75 Col.L.R. 1189, 1196–97 (1975).

Accordingly, it is this 5th day of April, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion of the defendant Leo DaLesio to dismiss the complaint, be and the same is, hereby DENIED.

2. That the motion of the defendant Local 311 to dismiss the complaint, be and the same is, hereby DENIED.

3. That the motion of the defendant Joint Council 62 to dismiss the complaint or in the alternative for a more definite statement be, and the same is, hereby DENIED; and

4. Leave is granted to the defendants to file an appropriate response to the complaint within fifteen (15) days.